TREG R. TAYLOR
ATTORNEY GENERAL

Ronald W. Opsahl (Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Fax: (907) 276-3697
Email: ron.opsahl@alaska.gov

Kathleen C. Schroder (*pro hac vice*)
Gail L. Wurtzler (*pro hac vice*)
Mark E. Champoux (*pro hac vice*)
Nicholas R. Peppler (*pro hac vice*)
Davis Graham & Stubbs LLP
1550 Seventeenth St., Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: katie.schroder@dgslaw.com
gail.wurtzler@dgslaw.com
mark.champoux@dgslaw.com
nick.peppler@dgslaw.com

Attorneys for the State of Alaska

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

STATE OF ALASKA,
Plaintiff,
v.

UNITED STATES DEPARTMENT OF THE INTERIOR, DEB HAALAND, in her official capacity as Secretary of the Department of the Interior, INTERIOR BOARD OF LAND APPEALS, STEVEN J. LECHNER, in his official capacity as Acting Chief Administrative Judge of the Interior Board of Land Appeals, BUREAU OF LAND MANAGEMENT, TRACY STONE-MANNING, in her official capacity as Director of the Bureau of Land Management, BUREAU OF LAND MANAGEMENT ALASKA STATE OFFICE, and THOMAS HEINLEIN, in his official capacity as Acting State Director of the Bureau of Land Management Alaska State Office,
Defendants.

Case No. 3:22-cv-00078-SLG

**PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD**

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD
Page 1 of 16

In accordance with Local Civil Rule 16.3(b)(2) and Order re Stipulated Motion for Briefing Schedule (ECF No. 22), Plaintiff State of Alaska hereby moves to supplement the administrative record in this case with the following 1:250,000 quadrangle maps prepared by the United States Geological Survey:

- Flaxman Island 1951 (as copied in 1952 by the Army Map Service)
- Barter Island 1951
- Mt. Michelson 1951
- Demarcation Point 1951
- Arctic 1951
- Table Mountain 1951
- Coleen 1951

Counsel for the State of Alaska has conferred with the Federal Defendants about this motion. Federal Defendants oppose this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

This case involves a dispute between the State of Alaska and the United States over the northwest boundary of the Arctic National Wildlife Refuge ("the Refuge"). The Refuge has its origins in Public Land Order 2214 ("PLO 2214"), which established the Arctic National Wildlife Range ("the Range") in 1960. PLO 2214 contained a legal description of the lands to be withdrawn for the Range and identified the northwest boundary of the Range as the Canning River. In 2020, the Interior Board of Land Appeals ("IBLA"), an administrative board within the United States Department of the

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 2 of 16

Interior, interpreted the reference to the Canning River in PLO 2214 to mean the Staines River.

The State now seeks to supplement the administrative record with 20 United States Geological Survey ("USGS") 1:250,000 quadrangle maps[1] that were prepared prior to, and existed during, the period when the United States Fish and Wildlife Service ("USFWS")[2] was developing the legal description in PLO 2214. These maps are collectively referred to as "the 1951 Quadrangle Maps."[3] These maps depict the seven quadrangles that together include the entire boundary described in PLO 2214. *See* Ex. 1, Gervelis Decl. p. 3, 5 ¶¶ 6, 12. These maps are attached as Exhibit 2.

**FACTUAL BACKGROUND**

In 1960, Secretary of the Interior Fred A. Seaton issued PLO 2214, which withdrew nearly nine million acres of public lands to establish the Range. 25 Fed. Reg. 12,598 (Dec. 9, 1960) (AR000935). The legal description in PLO 2214 defines the

---

[1] Quadrangle maps or "quads" are a type of topographic map produced by USGS. Most USGS quadrangle maps divide the United States into areas bounded by two lines of latitude and two lines of longitude. A 1:250,000 scale means that one inch on the map corresponds to approximately four miles in the physical world. *See* Ex. 1, Gervelis Decl. p. 2 ¶ 5.

[2] Both the USGS and the USFWS are agencies within the Department of the Interior.

[3] There are a total of 20 editions of the 1951 Quadrangle Maps. The year 1951 refers to the map version year; in this case, USGS prepared 1951 versions of the 1:250,000 quadrangle maps for all seven quadrangles encompassing the Range. The USGS, however, also may publish multiple editions for a given version. *See* Ex. 1, Gervelis Decl. p. 4 ¶ 10. For example, the USGS published multiple editions of the 1951 versions for the Coleen, Demarcation Point, Mt. Michelson, and Table Mountain quadrangles. *See* Exhibit 2. In the interest of a complete record, the State has proposed to supplement the administrative record with all editions of the 1951 versions of the 1:250,000 quadrangle maps for the seven quadrangles encompassing the Range.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 3 of 16

Range's northwest boundary as "the mean high water mark of the extreme west bank of the Canning River." *Id.* In 2020, the IBLA interpreted this unambiguous reference to the Canning River to mean the Staines River. *See State of Alaska*, 196 IBLA 155 (2020) (AR000006). The State now challenges this decision and, particularly, the IBLA's interpretation of the "Canning River" to mean the "Staines River."

## I. Drafting and Issuance of PLO 2214

Although PLO 2214 was issued in 1960, the work to determine the boundaries of the public lands to be withdrawn for the Range began several years earlier.[4] In late 1957, the USFWS drafted and submitted to the Secretary an application to withdraw these public lands and create the Range. *See* Memorandum from Director, Bureau of Sport Fisheries and Wildlife, USFWS, to Secretary of the Interior, "USFWS Application for Withdrawal by Public Land Order" (Nov. 18, 1957) (AR000622–27). This application included a legal description of the public lands proposed for withdrawal but did not include a map. *See id.* Ex. A (AR000624–27); *see State of Alaska*, 196 IBLA 155, 159 (2020) (AR000010).

[4] *See* Arctic Wildlife Range Proposed Metes and Bounds (June 24, 1957) (AR000145–51) (draft metes and bounds description for land withdrawal application); Telegram from Bureau of Sport Fisheries, USFWS, Washington, D.C. to Bureau of Sport Fisheries, USFWS, Juneau, Alaska (Oct. 17, 1957) (AR000193–95) (requesting metes and bounds description for land withdrawal application); Arctic Wildlife Range Proposed Metes and Bounds (Oct. 25, 1957) (AR000208–11) (draft metes and bounds description for land withdrawal application); Arctic Wildlife Range Proposed Metes and Bounds (Oct. 25, 1957) (AR000213–16) (with handwritten revisions).

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 4 of 16

To prepare the legal description in the withdrawal application, the USFWS would have used USGS 1:250,000 quadrangle maps. *See* Decision from Bud C. Cribley, BLM Alaska State Office, to Gerald Jennings, Alaska Dep't of Natural Res. at 2 (Nov. 8, 2016) (AR000420) ("The only mapping available during the drafting of PLO No. 2214 was the [USGS] 1:250,000 topographic maps and some of the larger scale 1:63,360 topographic maps.").[5] That map or those maps, however, are not included in the administrative record.

After the USFWS submitted the withdrawal application to the Secretary, the Department of the Interior published notice of the proposed withdrawal in the Federal Register on January 1, 1958. *See* 23 Fed. Reg. 364 (Jan. 1, 1958). That notice also did not include a map. Additionally, the BLM's Land Office requested from the Branch of Land Status the "area recorded on U.S.G.S. 1:250,000 maps" and then listed five of the seven quadrangles that the Range encompassed. *See* BLM Form 4-001a, Case No. 017050 (status furnished July 30, 1959) (AR001958). These 1:250,000 quadrangle maps are not in the administrative record.

The legal description in the notice of the proposed withdrawal did not change after it was published in 1958. In fact, there was no change to the legal description between November 18, 1957, when USFWS submitted its withdrawal application, and December 1960, when Secretary Seaton signed PLO 2214 and it was published in the Federal

[5] The State questions the BLM's statement that 1:63,360 topographic maps of the area bounded by the Range were available in the late 1950s.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 5 of 16

Register. *See* 25 Fed. Reg. 12,598 (Dec. 9, 1960) (AR000935). *See also* Ex. 1, Gervelis Decl. p. 5 ¶ 12.

## II. The IBLA's Decision

In the years after Secretary Seaton issued PLO 2214, the State and the BLM disagreed on whether the PLO 2214 established the Canning or the Staines River as the Range's, now the Refuge's, northwest boundary. This dispute culminated in two decisions issued by the BLM Alaska State Office in 2016 that rejected the State's assertion that PLO 2214 established the Canning River as that northwest boundary.[6] The State appealed the BLM's decisions to the IBLA, which issued the decision that is the subject of this litigation. *See State of Alaska*, 196 IBLA 155, 155–56 (2020) (AR000006–07).

In its appeal before the IBLA, the State maintained that PLO 2214 unambiguously established the Canning River as the northwest boundary of the Range, now the Refuge. *Alaska*, 196 IBLA at 177–78 (AR000028–29). Despite this unambiguous language, the IBLA elected to examine the intent behind the legal description in PLO 2214. *Id.* at 180–86 (AR000031–37). The IBLA explained that the "primary focus" of its analysis was "to

[6] In one decision, the BLM denied the State's applications for general grant lands under section 6(b) of the Alaska Statehood Act, Pub. L. No. 85-508, 72 Stat. 339 (1958), for lands between the Canning and Staines Rivers because the lands were within the area reserved as the Range, now the Refuge, and unavailable for selection. *Alaska*, 196 IBLA at 168–69 (AR000019–20). In the other decision, the BLM denied the State's protest of the BLM's proposed official filing of plats of survey for lands between the Canning and Staines Rivers, which adopted a fixed and limiting boundary along what the BLM regarded as the Staines River. *See id.* at 167–69 (AR000019–21). These decisions and their history are detailed in the State's Complaint, ECF No. 1, at paragraphs 26–90.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 6 of 16

discern the intent of the drafters who crafted the language used in PLO 2214, based on the resources then available and relied upon." *Id.* at 182 (AR000033).

The IBLA engaged in this review over the State's express objections. The State maintained that PLO 2214 is unambiguous and therefore the IBLA had no need to examine the drafters' intent. State Statement of Reasons, No. IBLA 2017-55 at 23 (AR000275); State Reply, No. IBLA 2017-55 at 4, 13 (AR000071, AR000080). Moreover, the State strenuously objected to the BLM's attempt to introduce in the IBLA appeal post-decisional documents found at the National Archives. *See, e.g.*, State Reply, No. IBLA 2017-55 at 4 (AR000071) (asserting that BLM could not "belatedly expand the survey case file with archival research purporting to show the 'intent' of PLO 2214"). The IBLA, however, elected to examine the BLM's newfound documents over the State's objections, reasoning that "the drafters' intended meaning in crafting the language of PLO 2214 is paramount" to its analysis. *See Alaska*, 196 IBLA at 185 (AR000036).

Based on its review of these and other documents, the IBLA found the "historical record to strongly, and almost uniformly, confirm BLM's position that the PLO's reference to the 'extreme west bank of the Canning River' was, in fact, intended to refer to the mapped channels of the Staines River . . . ." *Alaska*, 196 IBLA at 182 (AR000033). The IBLA cited three USGS quadrangle maps submitted during briefing as

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 7 of 16

a basis for this finding.[7] *Id.* at 182–83 n.185 (AR000033–34) (citing State Exhibit C, AR000619–21).

The IBLA also relied on the same three USGS quadrangle maps to reject the State's interpretation of the call to Brownlow Point in the legal description in PLO 2214. PLO 2214 describes "the extreme west bank of the Canning River" as approximately three miles southwest of Brownlow Point. 25 Fed. Reg. 12,598 (Dec. 9, 1960) (AR000935). The State had asserted that this legal description could not reference the Staines River because it is nearly four miles from Brownlow Point. *Alaska*, 196 IBLA at 191 (AR000042). The IBLA disagreed after finding that the location of Brownlow Point on the USGS maps was inconsistent with the State's asserted location of Brownlow Point. *See id.* at 198–99 (AR000049–50). Based on this finding and other findings, IBLA then affirmed the BLM's 2016 decisions. *See id.* at 206 (AR000057).

**ARGUMENT**

The State now seeks to supplement the administrative record with 1951 Quadrangle Maps. Although judicial review of agency action is typically limited to the administrative record in existence at the time of the agency decision, courts may admit extra-record evidence "to identify and plug holes in the administrative record" under the

---

[7] The referenced maps were submitted to demonstrate that the Staines and Canning Rivers were separate and distinct and not to demonstrate the USFWS's purported intent. *See* State Statement of Reasons, No. IBLA 2016-0109 at 13 (AR000600); BLM Answer, No. 2017-55 at 15 (AR000113). As explained in this Motion, the USGS had not published the 1955 versions of these quadrangle maps when the USFWS drafted the metes and bounds description of the Range boundary in 1957.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 8 of 16

following circumstances: "(1) if admission is necessary to determine 'whether the agency has considered all relevant factors and has explained its decision,' (2) if 'the agency has relied on documents not in the record,' (3) 'when supplementing the record is necessary to explain technical terms or complex subject matter,' or (4) 'when plaintiffs make a showing of agency bad faith.'" *Lands Council v. Forester of Region One of the U.S. Forest Serv.*, 395 F.3d 1019, 1030 (9th Cir. 2004) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)). Courts refer to these circumstances as the "*Lands Council* exceptions." The 1951 Quadrangle Maps may be added to the administrative record because they satisfy both the first and third *Lands Council* exceptions—they are necessary to determine whether the IBLA has considered "all relevant factors" and to "explain technical terms" and "complex subject matter."

## I. Supplementation is Appropriate to Determine Whether the IBLA Considered All Relevant Factors.

The 1951 Quadrangle Maps are necessary to determine whether the IBLA considered all relevant factors when interpreting PLO 2214. Courts will allow supplementation under the first *Lands Council* exception to "help fill gaps" in an administrative record. *See, e.g.*, *CP Salmon Corp. v. Ross*, No. 3:16-cv-00031-TMB, 2017 U.S. Dist. LEXIS 237406, *4 (D. Alaska Mar. 27, 2017). More generally, courts allow supplementation under this *Lands Council* exception to determine "whether the agency has considered all relevant factors" when evaluating the decision under the Administrative Procedure Act. *See Lands Council*, 395 F.3d at 1030. Here, the 1951

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 9 of 16

Quadrangle Maps are necessary both to fill gaps in the administrative record and to allow the Court to evaluate the integrity of the IBLA's analysis.

A. The 1951 Quadrangle Maps Are Necessary to Fill Gaps in the Administrative Record.

The 1951 Quadrangle Maps fill a significant void in the administrative record, which lacks the maps that the USFWS used to draft the legal description in PLO 2214. The IBLA recognized that the USFWS would have utilized USGS 1:250,000 topographic maps for this effort. *See Alaska*, 196 IBLA at 170 (AR000021) ("the only mapping available during the drafting of PLO No. 2214 were the USGS topographic maps" (internal quotations and alterations omitted)); *accord* Decision from Bud C. Cribley, BLM Alaska State Office, to Gerald Jennings, Alaska Dep't of Natural Res. at 2 (Nov. 8, 2016) (AR000420) ("The only mapping available during the drafting of PLO No. 2214 was the [USGS] 1:250,000 topographic maps and some of the larger scale 1:63,360 topographic maps."). Likewise, the BLM believed that the Range's boundary was recorded on USGS 1:250,000 maps. *See* BLM Form 4-001a, Case No. 017050 (status furnished July 30, 1959) (AR001958).

No such maps, however, are in the administrative record or even in the United States' historical records.[8] *See Alaska*, 196 IBLA at 158 (AR000009). Although the IBLA represented that it evaluated "the relevant USGS topographic maps of the region

---

[8] "BLM represent[ed] that the only maps found among the relevant records of the National Archives are the numbered metes and bounds map associated with the June description and a map of the entire territory of Alaska on which the boundaries of the proposed 'Arctic Wildlife Range' are drawn." *Alaska*, 196 IBLA at 158 (AR000009).

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 10 of 16

dating to 1955," *see id.* at 162 (AR0000013) (citing State Exhibit C, AR000619–21), this year corresponds to the aerial photographs on which the maps were based and not the year the maps were prepared or published. *See* State Exhibit C at 3 (AR000621) ("Topography by photogrammetric methods from aerial photographs taken 1955, field annotated 1955."). *See also* Ex. 1, Gervelis Decl. p. 4–5 ¶¶ 10, 11. Thus, the 1955 maps were published sometime after 1955.[9] *See also id.* p. 5 ¶ 11. Other maps in the administrative record also were finalized after the USFWS drafted the legal description in PLO 2214. *See, e.g.*, USGS Arctic National Wildlife Refuge – Alaska Boundary Series (AR000923–34) (compiled in 1960).

This temporal difference in maps is significant. The boundary of the Range had not been surveyed in 1957 when the USFWS drafted the metes and bounds legal description in PLO 2214. *See* 196 IBLA at 161 (AR000012). Over time, additional aerial photographs and on-the-ground surveys allowed the USGS to refine and add detail to its quadrangle maps of the Range. Ex. 1, Gervelis Decl. p. 3–4 ¶ 9. Therefore, the legal description in PLO 2214 may be retraced more precisely on 1951 Quadrangle Maps than maps developed later. Because the administrative record is missing the 1:250,000 quadrangle maps the USFWS would have used to draft the legal description in PLO 2214, the 1951 Quadrangle Maps should be added to the administrative record.

---

[9] The State referenced the maps in Exhibit C to its Statement of Reasons as "maps of the era" simply to demonstrate that, at the time, the Staines and Canning Rivers were considered to be separate and distinct. State Statement of Reasons, No. IBLA 2016-0109 at 13 (AR000600); *accord* BLM Answer, No. 2017-55 at 15 (AR000113) (describing State Exhibit C as "maps of the era").

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 11 of 16

B. The Quadrangle Maps Inform Whether the IBLA Considered All Relevant Factors.

Not only are the 1951 Quadrangle Maps necessary to fill gaps in the administrative record, they inform this Court's analysis of whether the IBLA considered all relevant factors when interpreting PLO 2214. When evaluating whether the IBLA decision was arbitrary or capricious, the Court must "assess only whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Transp. Div. of the Int'l Ass'n of Sheet Metal, Air, Rail, & Transp. Workers v. Fed. R.R. Admin.*, 988 F.3d 1170, 1178 (9th Cir. 2021) (quoting *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1905 (2020)). The 1951 Quadrangle Maps inform this Court's inquiry as to whether the IBLA considered all relevant factors when reaching its decision.

First, the 1951 Quadrangle Maps are relevant to the question of whether the IBLA considered all relevant factors when evaluating the USFWS's intent in drafting PLO 2214.[10] This question is significant given that the IBLA considered the USFWS's intent in drafting PLO 2214 to be "paramount" to its interpretation. *See Alaska*, 196 IBLA at 185 (AR000036). The IBLA purported to discern the intent behind PLO

[10] The State continues to maintain that PLO 2214 is unambiguous on its face and, therefore, the IBLA erred by attempting to discern its drafters' intent. *See* State Statement of Reasons, No. IBLA 2017-55 at 23 (AR000275); State Reply No. IBLA 2017-55 at 4, 13 (AR000071, AR000080). By asserting that the 1951 Quadrangle Maps are relevant to the question of whether the IBLA considered all relevant factors when evaluating the USFWS's intent in drafting PLO 2214, the State does not waive, and instead expressly reserves, its ability to raise this argument in this appeal.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 12 of 16

2214 "based on the resources then available and relied upon." *Id.* at 182 (AR000033). To do so, however, the IBLA evaluated materials hand-picked and presented by the BLM based on its review of National Archives files. *See id.* at 183 (AR000034). Because the National Archives file contained only a handful of maps, the IBLA put particular weight on a hand-drawn boundary on a map that the IBLA assumed had been prepared in conjunction with the USFWS's draft legal description. *See id.* at 183 (AR000034) ("perhaps the strongest evidence of contemporaneous drafter intent lies in the FWS map created alongside and to accompany the metes and bounds descriptions developed by FWS in connection with the withdrawal process") (citing BLM Exhibit G) (AR000154)). Therefore, supplementing the administrative record with the 1951 Quadrangle Maps would allow the Court to consider whether the IBLA considered "all relevant factors" when discerning the USFWS's intent.

Second, the 1951 Quadrangle Maps are necessary to determine whether the IBLA considered all relevant factors when interpreting the call to Brownlow Point in PLO 2214. The IBLA relied on three USGS quadrangle maps developed after 1955 to disagree with the State's interpretation of this call. *Alaska*, 196 IBLA 198–99 (AR000049–50). In doing so, the IBLA reasoned that "[t]hese 1955 Quadrangle maps, as informed by aerial photographs, were the resources employed by the drafters of the metes and bounds descriptions for the Withdrawal Application and the PLO." *Id.* at 199 (AR000050). The 1951 Quadrangle Maps, however, further and more appropriately inform the interpretation of the legal description in PLO 2214 than maps that were not

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 13 of 16

published when the USFWS drafted its legal description. Ex. 1, Gervelis Decl. p. 5 ¶ 13. Accordingly, supplementation with the 1951 Quadrangle Maps is necessary to evaluate whether the IBLA considered all relevant factors when interpreting PLO 2214.

Finally, supplementation of the administrative record with the 1951 Quadrangle Maps is consistent with the IBLA's decision because the IBLA itself endorsed consideration of extra-record materials. The IBLA recognized that "resources that were before those parties contemporaneous with the development of the PLO and that may have informed their intent (or reveal it) are relevant to the core question before us, whether or not they were considered separately by BLM in connection with each of its subsequent actions." *Alaska*, 196 IBLA at 185 (AR000036). It further found "[i]t would be unreasonable . . . to turn a blind eye to the readily apparent evidentiary value of these materials." *Id.* Therefore, supplementation of the administrative record with the 1951 Quadrangle Maps falls within the first *Lands Council* exception.

## II. The 1951 Quadrangle Maps Are Necessary to Explain Technical Terms or Complex Subject Matter.

The Court may also supplement the administrative record with the 1951 Quadrangle Maps under the third *Lands Council* exception because they are "necessary to explain technical terms or complex subject matter." *Lands Council*, 395 F.3d at 1030. The 1951 Quadrangle Maps inform the technical interpretation of the legal description in PLO 2214, for the reasons detailed above. Furthermore, they aid the Court in understanding the complicated history of PLO 2214 and this case.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 14 of 16

In *Alegre v. United States*, No. 16-cv-2442-AJB-KSC, 2021 U.S. Dist. LEXIS 211670 (S.D. Cal. July 29, 2021), the district court allowed supplementation of the administrative record for similar reasons. That case involved a dispute over decisions as to whether individuals were eligible to be enrolled and federally recognized as San Pasqual Indians. *See id.* at *5–6. Although the agency proceedings at issue occurred between 2005 and 2016, *see id.*, the Court allowed supplementation of the administrative record with documents from the 1800s and 1900s relating to enrollment of San Pasqual Indians "to help explain the history of the case." *See id.* at *24.

Analogous circumstances exist here. Given the long and complex history of the dispute over the reference to the Canning River in PLO 2214, the 1951 Quadrangle Maps are necessary to explain and understand this case and PLO 2214. Accordingly, the Court may supplement the administrative record on this basis.

## CONCLUSION

For these reasons, the administrative record should be supplemented to include the 1951 Quadrangle Maps.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 15 of 16

DATED: November 17, 2022.

TREG R. TAYLOR
ATTORNEY GENERAL

By: */s/ Ronald W. Opsahl*
Ronald W. Opsahl (Alaska Bar No. 2108081)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 279-2834
Email: ron.opsahl@alaska.gov

By: */s/ Kathleen C. Schroder*
Kathleen C. Schroder (*pro hac vice*)
Gail L. Wurtzler (*pro hac vice*)
Mark E. Champoux (*pro hac vice*)
Nicholas R. Peppler (*pro hac vice*)
Davis Graham & Stubbs LLP
1550 Seventeenth St., Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: katie.schroder@dgslaw.com
gail.wurtzler@dgslaw.com
mark.champoux@dgslaw.com
nick.peppler@dgslaw.com

Attorneys for the State of Alaska

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD Page 16 of 16

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

This document complies with the word limit of Local Civil Rule 7.4(a)(1) because, excluding the parts of the document exempted by Local Civil Rule 7.4(a)(4), this document contains 3,755 words.

*/s/ Kathleen C. Schroder*

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD

## CERTIFICATE OF SERVICE

I certify that on **November 17, 2022**, the foregoing documents were served electronically on all parties listed on the CM/ECF system.

*/s/ Kathleen C. Schroder*

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
PLAINTIFF'S MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD