Michael K. Robertson
U.S. Department of Justice
Environmental and Natural Resources Section
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
Phone 202-353-1389
Fax 202-305-0506
michael.robertson@usdoj.gov

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*<br><br>Defendants. | Case No. 3:22-cv-00078-SLG |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO ADMIT EXTRA-RECORD EVIDENCE[1]**

[1] Plaintiff styles its motion as one to "supplement" the administrative record. ECF No. 23. Plaintiff seeks to add documents that were not considered by the agency and therefore is more appropriately styled as a motion for leave to admit extra-record evidence. *See Friends of Rapid River v. Probert*, 427 F. Supp. 3d 1239, 1264 (D. Idaho 2019).

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
No. 3:22-cv-00078-SLG
1

## INTRODUCTION

In Administrative Procedure Act (APA) cases, the court's review is generally limited to whether the agency's decision, based on the record before the agency, was based on substantial evidence, or was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" 5 U.S.C. § 706(2)(A). Admitting extra-record evidence that the plaintiff could have brought before the agency but failed do so, and that does not fit within an established exception, only serves to muddy rather than clarify that inquiry.

As such, Plaintiff State of Alaska's Motion to Supplement the Administrative Record ("Motion"), ECF No. 23, must be denied for two independent reasons. First, Plaintiff failed to submit the proffered evidence ("1951 Maps") before the relevant agency, and therefore cannot belatedly do so upon judicial review. The principle of administrative waiver demands that Plaintiff's contentions not timely submitted to the agency are forfeited. Second, Plaintiff has failed to demonstrate that the 1951 Maps fall within either the first or third *Lands Council* exceptions to the prohibition against the consideration of extra-record evidence. The 1951 Maps do not serve to illuminate the relevant factors considered by the agency, or technical terms and complex subject matter. Rather, they are an attempt to insert competing evidence six years into this dispute in order to call into question the correctness of the agency's decision. Such a purpose is prohibited, and Plaintiff's Motion must be denied.

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
No. 3:22-cv-00078-SLG
2

## FACTUAL & PROCEDURAL BACKGROUND

This case concerns the review of a decision by the Interior Board of Land Appeals ("IBLA") regarding the northwestern boundary of the Arctic National Wildlife Refuge, formerly the Arctic National Wildlife Range. In 1957, the United States Fish and Wildlife Service ("USFWS") first described what would become the boundary of the Arctic National Wildlife Range in an initial metes and bounds description and accompanying map. AR000008, AR000136-55. A nearly identical description of the boundary was then adopted in the 1957 Withdrawal Application and the official legal description of the boundary found in the 1960 Public Land Order 2214 ("PLO 2214), issued by the Secretary of the Interior. AR000010-11, AR000622-25, AR000666-69. For more than six decades, the United States has identified the northwestern boundary of the Arctic National Wildlife Range (and now Refuge) as the extreme west bank of the westernmost distributary of the Canning River, in accordance with PLO 2214 and USFWS's preceding descriptions in the historical record. Despite the United States' consistent position, the State of Alaska brought two actions before BLM's Alaska State Office challenging that identification, and then appealed those decisions to the IBLA.

First, in October 2014, Alaska requested a priority conveyance from BLM of additional lands within six townships along the northwestern boundary of the Arctic National Wildlife Refuge pursuant to the Alaska Statehood Act, Pub. L. No. 85-508, 72 Stat. 339 (1958). AR000019, AR000780-81. BLM denied that request in February 2016 ("February 2016 Decision"). AR000019-20, AR000670-742. Second, in March 2016, Alaska submitted a protest to BLM, disputing a survey plat and associated field notes that

*Alaska v. United States Dept. of the Interior* 3
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
NO. 3:22-CV-00078-SLG

BLM had published for a seventh township along the northwestern boundary. AR000020, AR000262. BLM denied that protest in November 2016 ("November 2016 Decision"). AR000419-516.

Alaska then appealed the February 2016 and November 2016 Decisions to the IBLA whereupon they were consolidated. AR000006, AR000876. On November 9, 2020, the IBLA agreed with the Government's identification of the northwestern boundary of the Arctic National Wildlife Refuge and affirmed BLM's decisions. AR000007-8.

As a part of its review, the IBLA considered several maps submitted by the parties to help discern the intent of the drafter of PLO 2214 with respect to the northwestern boundary of the Arctic National Wildlife Range. These maps included the 1955 United States Geological Survey Topographic Maps ("1955 Maps"). Alaska conceded the 1955 Maps were "the maps created contemporaneously with the legal description of the Range when the application for it was first filed in 1957" and were "[t]he USGS maps of the era." AR000599-600, AR000618-21. And Alaska made no effort to proffer for IBLA consideration the 1951 maps that it now asks this Court to consider in the first instance.

## ARGUMENT

### I. Plaintiff forfeited the opportunity to introduce the 1951 Maps by failing to submit them during the administrative proceedings.

The State had ample opportunity to submit the 1951 Maps during the relevant administrative proceedings but failed to do so. The principle of administrative waiver requires that the State, through its inaction, forfeited the ability to add the 1951 Maps to

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
No. 3:22-cv-00078-SLG
4

the administrative record. The State cannot now add them for the first time on appeal to this Court.

The United States Supreme Court has long recognized that plaintiffs who partake in administrative proceedings and later challenge the outcome must raise their full contentions before the administrative agency. *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 553-54 (1978) (recognizing that "administrative proceedings should not be a game or forum to engage in unjustified obstructionism" whereby a party does not adequately bring the matter to the agency's attention and then seeks to have the agency determination vacated for failing to consider it); *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952) ("[O]rderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts."). This principle of administrative waiver, "commonly referred to as issue exhaustion," refers to when "it is inappropriate for courts reviewing agency decisions to consider arguments not raised before the administrative agency involved." *SSA Terminals v. Carrion*, 821 F.3d 1168, 1174 (9th Cir. 2016) (quoting *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 461-62 (6th Cir. 2004)).

Contentions not raised and exhausted before the administrative agency are thus rightly forfeited. *Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010) ("A party forfeits arguments that are not raised ruing the administrative process."); *see also Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764-65 (2004) (finding respondents forfeited objection not raised before Federal Motor Carrier Safety Administration);

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
NO. 3:22-CV-00078-SLG
5

*Universal Health Services, Inc. v. Thompson*, 363 F.3d 1013, 1019-1020 (9th Cir. 2004) (barring party's argument that was not raised in comments on proposed rulemaking).

Applying this principle, courts have repeatedly refused to admit extra-record evidence that was not timely and adequately presented to the administrative agency in the first instance. *See Little Traverse Lake Prop. Owners Ass'n v. Nat'l Park Serv.*, 883 F.3d 644, 658 (6th Cir. 2018) (rejecting plaintiff's attempt to supplement the administrative record with additional pictures, maps, and other documents that they could have submitted during the administrative process); *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991) (declining to consider extra-record testimony submitted for the first time in court, when plaintiff could have submitted it during agency proceedings); *Linemaster Switch Corp. v. U.S. E.P.A.*, 938 F.2d 1299, 1305 (D.C. Cir. 1991) (finding administrative record should not be supplemented with proffered data where plaintiffs failed to properly submit the data to the proper agency division or even flag it as relevant).

The principle of administrative waiver is particularly appropriate in IBLA proceedings, where the adversarial process requires parties to present their evidence and test their arguments before the agency decision-maker so that the agency is afforded the opportunity to decide the matter in the first instance. *See Sims v. Apfel*, 530 U.S. 103, 109-10 (2000) (recognizing that the rationale for requiring administrative waiver is at its greatest in adversarial administrative proceedings); *Or. Nat. Desert Ass'n v. McDaniel*, 751 F. Supp. 2d 1151, 1158 (D. Or. 2011) (recognizing that IBLA proceedings are adversarial, and that administrative waiver applies).

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
No. 3:22-cv-00078-SLG
6

In this case, in 2014 Alaska requested from BLM a priority conveyance of additional lands within six townships along the northwestern boundary of the Arctic National Wildlife Refuge, and in 2016, protested a survey plat and associated field notes for a seventh. AR000019-20, AR000780-81, AR000262. BLM denied both Alaska's request and protest. AR000019-21, AR000670-742, AR000419-516. Alaska appealed BLM's denials to the IBLA and on November 9, 2020, after years of significant briefing and submissions, the IBLA affirmed BLM's decisions. *Id*. During that span, Alaska submitted multiple maps for BLM and IBLA's consideration. *E.g.*, AR000426, AR000524, AR000592, AR000617-21, AR 000663-64, AR000861. At no point during six years of administrative proceedings before the agency, however, did Alaska ever submit the 1951 Maps or request that they be part of the administrative record. *See Vt. Yankee Nuclear Power Corp.*, 435 U.S. at 553 (recognizing that it is "incumbent upon [parties] who wish to participate to structure their participation so that it is meaningful, so that it alerts the agency to the [parties'] positions and contentions").

"In this case, Plaintiff[], not the [Department of the Interior], omitted the documents [Plaintiff] now seek[s] to add to the record." *Little Traverse Lake Prop. Owners Ass'n v. Nat'l Park Serv.*, 883 F.3d 644, 658 (6th Cir. 2018). Accordingly, Plaintiff forfeited the opportunity for the 1951 Maps to be added to the administrative record and Plaintiff's Motion should be denied on that basis alone.

## II. The 1951 Maps are not necessary for judicial review under the *Lands Council* exceptions.

Despite having failed to submit the 1951 Maps to the agency during the

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
NO. 3:22-CV-00078-SLG
7

administrative proceedings, Plaintiff argues that the 1951 Maps should nonetheless be added to the administrative record as extra-record evidence. Plaintiff relies on two narrow exceptions found in *Lands Council v. Powell*, 395 F.3d 1019 (9th Cir. 2005), and other cases that permit, on the rarest of occasions, the addition of extra-record evidence to the administrative record. *Id*. at 1030. Neither exception, however, applies in this case.

In almost all instances, judicial review in APA cases is limited to the "administrative record already in existence, not some new record made initially in the reviewing court." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). This standard ensures that the agency is afforded the requisite deference and prevents the reviewing court from improperly substituting its judgment for that of the agency. *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014); *see Lands Council v. Powell*, 395 F.3d at 1030 (cautioning that if federal courts were "routinely or liberally to admit new evidence . . . the federal courts would be proceeding, in effect, de novo rather than with the proper deference to agency processes, expertise, and decision-making"). In rare and limited circumstances, this standard may be overcome, but only when necessary for effective judicial review, *see Mission Creek Band of Mission Indians v. Zinke*, No. 5:16-cv-00569-ODW(SPx), 2017 WL 10562667, at *4 (C.D. Cal. Nov. 1, 2017), and where plaintiff "demonstrate[s] with particularity that the extra-record evidence they proffer falls within one of the enumerated exceptions." *Yellowstone to Uintas Connection v. Bolling*, No. 4:20-cv-00192-DCN, 2021 WL 5702158, at *10 (D. Idaho Dec. 1, 2021) (citing *Animal Def. Council v. Hodel*, 840 F.2d 1432, 1438 (9th Cir. 1988), opinion amended by 867

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
No. 3:22-cv-00078-SLG
8

F.2d 1244 (9th Cir. 1989)). Plaintiff's burden is a heavy one. *See Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010).

### A. The 1951 Maps are not necessary to determine whether the agency considered all relevant factors and explained its decision.

The first *Lands Council* exception permits the admission of extra-record evidence when "necessary to determine 'whether the agency has considered all relevant factors and has explained its decision[.]'" 395 F.3d at 1030 (quoting *Sw. Ctr. for Biological Diversity v. United States Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)); *see also Animal Defense Council v. Hodel*, 840 F.2d 1432, 1436 (9th Cir. 1988) ("When such a failure to explain agency action effectively frustrates judicial review, the court may 'obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary.'" (quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973))).

But the "relevant factors" exception only applies where "the agency 'fails to consider a general subject matter'" and the evidence is necessary for the court to engage in judicial review. *Ctr. for Biological Diversity v. Skalski*, 61 F. Supp. 3d 945, 951-52 (E.D. Cal. 2014) (quoting *In re Delta Smelt Consol. Cases*, No. 1:09-CV-1053 OWW DLB, 2010 WL 2520946, at *6 (E.D. Cal. June 21, 2010). "Where '[t]he record contains sufficient information to explain how the [agency used the information before it] and why it reached its decision,' the exception does not apply." *Id*. at 951 (quoting *Cook Inletkeeper v. U.S. E.P.A.*, 400 F. App'x 239, 240-41 (9th Cir. 2010)) (alterations in original). Similarly, when mere "specific hypotheses" offered by the plaintiff are omitted

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
No. 3:22-cv-00078-SLG
9

from agency consideration, the exception does not apply. *Id*. at 952 (quoting *In re Delta Smelt Consol. Cases*, 2010 WL 2520946, at *6).

The 1951 Maps were never presented by Alaska to BLM and the IBLA for consideration. But the general subject of which maps were most appropriate for discerning the intent in 1960 of the drafter of PLO 2214 *was* thoroughly considered. *E.g.*, AR00033-36; *see Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. Zinke*, 889 F.3d 584, 600 (9th Cir. 2018) (rejecting extra-record evidence where the evidence went to an issue considered by the agency, "even if the specific data proffered . . . was not available to the [agency]"); *ForestKeeper v. La Price*, 270 F. Supp. 3d 1182, 1228 (E.D. Cal. 2017) (rejecting extra-record evidence where the agency addressed the "general subject matter" found in proposed declarations). The IBLA received evidence and argument from the State on the contemporaneous maps available to the USFWS and BLM. The IBLA concluded the 1955 Maps were relevant, but that the USFWS metes and bounds map was "perhaps the strongest evidence of contemporaneous drafter intent." AR000034; AR000154. The IBLA based its conclusion on, among other things, the State's *admission* that the 1955 Maps were "created contemporaneously with the legal description of the Range" and were "[t]he USGS maps of the era," AR000599-600. Plus, the USFWS metes and bounds map, AR000154, contains details that accord with the written metes and bounds description that eventually ended up in PLO 2214. Plaintiff's new evidence, never before presented to BLM or the IBLA, does not help explain the conclusion the IBLA reached; it instead tries to challenge the correctness of that conclusion and should not be admitted. *See, e.g.*,

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
No. 3:22-cv-00078-SLG
10

*Asarco, Inc v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980) (recognizing that "[c]onsideration of the evidence to determine the correctness or wisdom of the agency's decision is not permitted"); *Friends of Animals, Inc. v. Jewell*, 185 F. Supp. 3d 60, 65 (D.D.C. 2016) (rejecting declaration proffered under relevant factors exception that was not in possession of BLM when it made its decision).

Plaintiff presents several arguments for admission of the 1951 Maps under the "relevant factors" exception, none of which have merit. Plaintiff asserts that the 1951 Maps should be admitted because they would have been "prepared prior to, and existed during" the time period the USFWS drafted the language in the withdrawal application that would eventually be adopted in the language of PLO 2214. Mot. 3, ECF No. 23. But Plaintiff's newfound speculation that the 1951 Maps were in existence and therefore *might* have been considered by the drafter of PLO 2214 and its antecedents, is precisely the sort of "specific hypothes[is]" that is prohibited under the first *Lands Council* exception. The fact that certain maps were in existence when PLO 2214 and its antecedents were drafted is not sufficient grounds to justify their belated addition to the administrative record as extra-record evidence. If it were, all manner of materials would potentially be subject to inclusion and the deferential standard of review applied in APA cases would be compromised.

Plaintiff also asserts that the 1951 Maps must now be added to the administrative record because of a perceived gap in BLM's November 2016 Decision. The November 2016 Decision states that "[t]he only mapping available during the drafting of PLO No. 2214 was the [U.S. Geological Survey] (USGS) 1:250,000 topographic maps and some of

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
No. 3:22-cv-00078-SLG
11

the larger scale 1:63,360 topographic maps." Mot. 5, ECF No. 23, citing AR000420. The statement does not reference a specific year. Plaintiff speculates that their 1951 Maps must be the maps BLM is referencing. But the 1955 Maps that are in the administrative record, AR000618-21, and that the State *admitted* were contemporaneous maps available at the time of the drafting of PLO 2214, AR000599-600, are in fact 1:250,000 and 1:63,360 topographic maps. AR000618 (1:250,000 topographic map); AR000619-21 (1:63,360 topographic maps).[2] The State cannot now fault the IBLA for relying on the State's own admission. In any event, the IBLA concluded that another map, the USFWS metes and bounds map, was "perhaps the strongest evidence of contemporaneous drafter intent." AR000034; AR000154.

The 1951 Maps are not proffered to determine whether the IBLA considered all relevant factors. Rather, they are proffered as an alternate, speculative set of facts—namely, which maps the drafters of PLO 2214 could possibly have considered—to convince this Court that BLM and the IBLA's decisions were in error. "This is precisely the type of extra-record evidence that the court may not consider." *Greater Hells Canyon Council v. Stein*, No. 2:17-cv-00843-SU, 2018 WL 3966289, at *6 (D. Or. June 11, 2018) (rejecting declaration and scientific evidence that sought to provide an alternate and preferred version of the facts compared to what had been presented to the agency); *see*

[2] Plaintiff attempts to escape its prior admission by arguing that it relied on the 1955 Maps to demonstrate only that "the Staines and Canning Rivers were separate and distinct" and not to demonstrate intent. ECF No. 23, at 8 n.7. Plaintiff's contention is belied by the fact that the State had argued that the drafter's intent should be inferred from the omission of the "Staines River" in PLO 2214 when the Staines River was identified on the 1955 Maps. AR000600.

*also Nw. Envtl. Advocs v. Nat'l Marine Fisheries Serv.*, 460 F.3d 1125, 1144 (9th Cir. 2006) (finding the court may not consider extra-record evidence to determine the correctness of the agency's decision) (citing *Asarco, Inc.*, 616 F.2d at 1160). Extra-record evidence that purports to demonstrate a conclusion the agency *should* have reached is not appropriate for consideration. *See Friends of Rapid River v. Probert*, 427 F. Supp. 3d 1239, 1264 (D. Idaho 2019).

Finally, Plaintiff argues that admission of its 1951 Maps is proper because the IBLA "endorsed consideration of extra-record materials" and the Court should thus do so here as well. ECF No. 23, at 14. But the IBLA and this Court are subject to different standards of review under the APA. Unlike this Court, the IBLA is authorized to conduct de novo review and consider extra-record evidence. 5 U.S.C. § 557(b) ("On appeal from or review of the initial decision, the agency has all the powers which it would have in making the initial decision . . . ."); *see, e.g. IMC Kalium Carlsbad, Inc. v. Interior Bd. of Land Appeals*, 206 F.3d 1003, 1009 (10th Cir. 2000) ("The IBLA has de novo review authority over BLM decisions.").

**B. The 1951 Maps are not necessary to explain technical terms or complex subject matter**

The third *Lands Council* exception permits the admission of extra-record evidence that is "'necessary to explain technical terms or complex subject matter[.]'" 395 F.3d at 1030 (quoting *Sw. Ctr. for Biological Diversity*, 100 F.3d at 1450). Again, this exception is a narrow one. The extra-record evidence must assist the court's understanding of a highly specialized or scientific matter. Extra-record evidence that "merely attempts to

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
No. 3:22-cv-00078-SLG
13

argue the sufficiency of the record . . . should be stricken." *Alsea Valley All. v. Evans*, 143 F. Supp. 2d 1214, 1216 (D. Or. 2001); *see also Asarco, Inc. v. U.S. E.P.A.*, 616 F.2d 1153, 1161 (9th Cir. 1980) (recognizing that extra-record evidence submitted under the guise of helping explain highly technical information is improper if it was "elicited for the purpose of determining the scientific merit of the [agency's] decision"); *Ctr. for Biological Diversity v. Skalski*, 61 F. Supp. 3d 945, 952 (E.D. Cal. 2014) (rejecting extra-record evidence where testimony did not explain concepts or issues that cannot be understood through the administrative record alone but instead represented an attack on the agency's conclusions).

Here, the 1951 Maps do not serve to explain any scientific, technical, or otherwise complex matter found in the record. *See, e.g.*, *Nat'l Steel Corp., Great Lakes Div. v. U.S. Coast Guard*, 995 F. Supp. 773, 777-78 (E.D. Mich. 1997) (recognizing that affidavit containing technical explanation of material in the record fit within exception). Nor do they take complicated data and information found within the administrative record and provide it in a more understandable format. *See, e.g.*, *Stop B2H Coal. v. Bureau of Land Mgmt.*, 552 F. Supp. 3d 1101, 1119-21 (D. Or. 2021) (admitting four exhibits created by plaintiffs that synthesized information and data already in the record and presented it in a format that was easier to understand). Instead, the 1951 Maps are proffered for the purpose of criticizing the information that was relied on by the agency in reaching its decision. This is not a proper purpose under the *Lands Council* exceptions. *See Native Ecosystems Council v. Weldon*, 232 F. Supp. 3d 1142, 1148 (D. Mont. 2017) (rejecting extra-record evidence where testimony went beyond mere explanation of technical terms

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
No. 3:22-cv-00078-SLG
14

and instead challenged the underlying data used by the agency).

The lone case relied on by Plaintiff, *Alegre v. United States*, No. 16-cv-2442-AJB-KSC, 2021 WL 4934982 (S.D. Cal. July 29, 2021), is easily distinguishable. In discussing the third *Lands Council* exception, the court in *Alegre* admitted only four extra-record documents. The court admitted the documents not because of their explanatory nature, but because the Government *did not object* to their admission. 2021 WL 4934982, at *6. The 1951 Maps are more akin to the other historical documents in *Alegre* that merely presented particular information plaintiff argued the agency should have considered and which were rejected by the court. *Id*. Such documents are not appropriate for inclusion in the record as extra-record evidence. *Id*.

**CONCLUSION**

For the reasons stated herein, Plaintiff's Motion to admit extra-record evidence should be denied. If, however, the Court were inclined to grant Plaintiff's Motion, Defendants respectfully request that the Court remand this case to the IBLA so that the agency may consider the 1951 Maps in the first instance.

DATED: December 15, 2022.

Respectfully Submitted,

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

*/s/ Michael K. Robertson*
MICHAEL K. ROBERTSON
Trial Attorney
Natural Resources Section

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
NO. 3:22-CV-00078-SLG
15

P.O. Box 7611
Washington, D.C. 20044
Phone: 202-353-1389 || Fax 202-305-0506
michael.robertson@usdoj.gov

*Counsel for Defendants*

Of Counsel:

Mike Gieryic
Office of the Regional Solicitor
U.S. Department of the Interior
4230 University Drive, Suite 300
Anchorage, AK 99508
Phone: 907-271-1420
mike.gieryic@sol.doi.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2022, a copy of the foregoing was served by electronic means on all counsel of record by the Court's CM/ECF system.

*/s/ Michael K. Robertson*
MICHAEL K. ROBERTSON

*Alaska v. United States Dept. of the Interior*
Resp. in Opp. to Mot. to Admit Extra-Record Evid.
NO. 3:22-CV-00078-SLG
16