# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| STATE OF ALASKA, | |
| Plaintiff, | |
| v. | |
| UNITED STATES DEPARTMENT OF THE INTERIOR, et al., | Case No. 3:22-cv-00078-SLG |
| Defendants. | |

## ORDER RE MOTION TO SUPPLEMENT ADMINISTRATIVE RECORD

Before the Court at Docket 23 is Plaintiff State of Alaska's (the "State") *Motion to Supplement Administrative Record*. Federal Defendants opposed the State's motion at Docket 27, to which the State replied at Docket 28.[1] Oral argument was not requested and was not necessary to the Court's determination.

## BACKGROUND

This case follows a series of historical actions dating back to the 1950s when the federal government took steps to establish the Arctic National Wildlife Refuge ("ANWR," formerly known as the Arctic National Wildlife Range).[2] In 1960, the

---

[1] Federal Defendants are the U.S. Department of the Interior (the "DOI"), Deb Haaland (Secretary, DOI), the Interior Board of Land Appeals (the "IBLA"), Steven Lechner (Acting Chief Administrative Judge, IBLA), the Bureau of Land Management ("BLM"), Tracy Stone-Manning (Director, BLM), the BLM Alaska State Office, and Thomas Heinlein (Acting State Director, BLM Alaska State Office).

[2] The parties do not dispute the majority of the facts relevant to the instant motion. *See generally* Docket 23 at 3-8 (providing factual overview); Docket 27 at 3-4 (same). Thus, for the purposes of recounting the facts here, the Court takes as true the non-conclusory factual statements in the State's complaint at Docket 1 and the parties' briefing.

U.S. Fish and Wildlife Service ("USFWS"), an agency within the DOI, established ANWR by issuing Public Land Order No. 2214 ("PLO 2214"), which set aside from the public domain millions of acres of land located in northeastern Alaska.[3]  Over the following decades, the State followed the processes prescribed by the Alaska Statehood Act (the "Statehood Act") and the 1980 Alaska National Interest Lands Conservation Act ("ANILCA") to request that BLM convey to the State approximately 20,000 acres of land across several townships located between the Canning and Staines Rivers and along the northwestern boundary of ANWR.[4]  For reasons that are not entirely clear from the record, no final action had been taken on these requests by the early 2010s.[5]  In October 2014, the State sent a letter to BLM requesting the formal conveyance of much of this land.[6]  In February 2016, BLM rejected the State's request.[7]  In a separate action, BLM filed a *Notice of Filing of Plats of Survey* to describe formally a portion of the disputed land known as Township 6-23 based on a 2012 survey that adopted a boundary along the Staines River.[8]  The State protested the *Notice of Filing of Plats of Survey*, which

---

[3] Docket 1 at 2-3 ¶¶ 2, 4.

[4] Docket 1 at 2, 8-9, 17 ¶¶ 3, 26-27, 31-32, 76-77.

[5] *See, e.g.*, Docket 1 at 17 ¶¶ 33, 75-77 (suggesting the lack of final responses from BLM to actions taken by the State between 1974 and 1993 pursuant to the Statehood Act and ANILCA until BLM responded in 2016 to the State's 2014 formal request for conveyance).

[6] Docket 1 at 17 ¶ 77.

[7] Docket 1 at 17-18 ¶ 78.

[8] Docket 1 at 18-19 ¶¶ 82-83; Notice of Filing of Plats of Survey; Alaska, 81 Fed. Reg. 10274

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 2 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 2 of 23

the BLM Alaska State Office denied.[9]  The State appealed these actions to the IBLA, which affirmed them both in a single decision dated November 9, 2020.  The State seeks judicial review of the IBLA's decision through the instant case pursuant to the Administrative Procedure Act.

At the heart of the challenged IBLA decision is the meaning of language in PLO 2214 describing ANWR's northwestern boundary as "the mean high water mark of the extreme west bank of the Canning River."[10]  This language originated in a 1957 application USFWS prepared to legally effectuate the land withdrawal for ANWR (the "1957 Withdrawal Application").[11]  The State maintains that this language unambiguously establishes ANWR's boundary as the western bank of the Canning River.[12]  Federal Defendants maintain, and the IBLA found in the decision challenged here, that the reference in the 1957 Withdrawal Application and PLO 2214 to the Canning River is actually a reference to the Staines River, the westernmost distributary of the Canning River.[13]  Federal Defendants' primary evidentiary support for their position is a metes and bounds description and accompanying map USFWS prepared in 1957 and a "nearly identical description

---

(Feb. 29, 2016).

[9] Docket 1 at 18-19 ¶¶ 83-84.

[10] Docket 1 at 3 ¶ 4.

[11] Docket 1 at 6 ¶¶ 17-18.

[12] Docket 1 at 2 ¶ 2; s*ee also* Docket 1-1 at 2 (map showing disputed boundary and land).

[13] Docket 27 at 3; Docket 1-1 at 2.

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 3 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 3 of 23

of the boundary [that] was then adopted in the 1957 Withdrawal Application and the official legal description of the boundary found in" PLO 2214.[14]

To resolve this dispute, the IBLA determined that it needed to ascertain "the intent of the drafters when formulating the language of PLO 2214."[15] In doing so, the IBLA reviewed a number of historical documents that are included in the Administrative Record filed in this Court, consisting of over 5,000 computer-generated pages of material dating back to the 1940s in the form of historical maps; legal descriptions; field reports; survey manuals, instructions, and results; and correspondence among the parties and other agencies within the DOI.[16] Of relevance here, the historical maps the IBLA reviewed and cited extensively to support its decision include three U.S. Geological Survey ("USGS") quadrangle maps containing the year 1955 that the State submitted during the IBLA proceedings.[17] Despite the 1955 marking, neither party identifies when, exactly, the USGS finalized and published these maps. The State claims that the USGS derived the maps from aerial photographs taken in 1955 but did not publish the

---

[14] Docket 27 at 3.

[15] Administrative Record ("A.R.") 7. Due to file size, Federal Defendants filed the Administrative Record conventionally. *See* Docket 16 (Defs.' Notice of Conventional Filing of Administrative Record on Electronic Media).

[16] *See* Docket 16-1 (Certification of the Administrative Record); Docket 16-2 (Administrative Record Index).

[17] Docket 23 at 7-8 (first citing A.R. 33-34; and then citing A.R. 619-21).

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 4 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 4 of 23

maps until "sometime after 1955."[18]  The distinction between the year of the

photographs on which the maps are based and the maps' publishing date is critical,

according to the State, because it means that no government entity had physically

surveyed ANWR's proposed boundary by 1957 when USFWS drafted the metes

and bounds description adopted in the 1957 Withdrawal Application and PLO

2214.[19]  Thus, in order to best determine the PLO 2214 drafters' intended

boundary, the State asserts that the Court must look to the USGS quadrangle

maps of that area that were published before 1957.[20]  The State now moves to

supplement the Administrative Record with 20 USGS topographic maps dated

1951 (the "1951 Maps").[21]  For reasons left untold, the State did not present the

1951 Maps to the IBLA during the underlying proceedings, so the IBLA did not

review them and they did not become part of the Administrative Record designated

in this case.

---

[18] Docket 23 at 10-11.  The State refers to these maps in a general sense, referring only once to them as "the 1955 maps," whereas Federal Defendants use the defined term "1955 Maps" to refer to them.  Docket 23 at 10-11; Docket 27 at 4.  For the avoidance of confusion, the Court will refer to these maps as the "1955 Maps" but understands the State's position, which Federal Defendants do not contest, to be that these maps were not finalized or published until after 1955.

[19] Docket 23 at 11.

[20] Docket 23 at 11.

[21] Docket 23 at 1-2, 11; Docket 23-2 (Ex. 2 to Pl.'s Motion to Suppl. Administrative Record).  Due to file size, the State conventionally filed these maps with the Court.  Docket 23-2.

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 5 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 5 of 23

# LEGAL STANDARD

"Judicial review of an agency decision is limited to 'the administrative record already in existence, not some new record made initially in the reviewing court.'"[22] The administrative record "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position."[23]

District courts may consider extra-record evidence—that is, evidence the agency did not consider in reaching the challenged decision—only in the following circumstances:

> (1) if admission is necessary to determine "whether the agency has considered all relevant factors and has explained its decision," (2) if "the agency has relied on documents not in the record," (3) "when supplementing the record is necessary to explain technical terms or complex subject matter," or (4) "when plaintiffs make a showing of agency bad faith."[24]

"These exceptions are to be narrowly construed, and the party seeking to admit extra-record evidence initially bears the burden of demonstrating that a relevant exception applies."[25]

---

[22] *Ctr. for Biological Diversity v. Wolf*, 447 F. Supp. 3d 965, 973 (D. Ariz. 2020) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam)).

[23] *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989) (emphasis omitted) (citations omitted).

[24] *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005) (quoting *Sw. Ctr. for Biological Diversity v. U.S. Forest Serv.*, 100 F.3d 1443, 1450 (9th Cir. 1996)).  Courts typically refer to these exceptions as "the *Lands Council* exceptions."  *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014).

[25] *San Luis*, 776 F.3d at 992-93 (citing *Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 6 of 23

## DISCUSSION

The State urges the Court to supplement the Administrative Record with the 1951 Maps based on two of the recognized exceptions to the general rule that judicial review of an agency action is limited to those "documents and materials directly or indirectly considered by agency decision-makers."[26] The State contends that the 1951 Maps would (1) help the Court determine "whether the IBLA considered all relevant factors" in reaching its decision and (2) are "necessary . . . to 'explain technical terms' and 'complex subject matter.'"[27] In opposition, Federal Defendants respond that (1) the State waived its opportunity to supplement the Administrative Record with the 1951 Maps because it did not present them during the IBLA proceedings and (2) neither of the *Lands Council* exceptions advanced by the State apply.[28] The Court first addresses Federal Defendants' administrative-waiver argument and then turns to the *Lands Council* exceptions.

---

1125, 1131 (9th Cir. 2010)).

[26] *Thompson*, 885 F.2d at 555 (emphasis omitted); Docket 23 at 8-9 (citing *Lands Council*, 395 F.3d at 1030).

[27] Docket 23 at 9 (citing *Lands Council*, 395 F.3d at 1030).

[28] Docket 27 at 2. The Court notes that Federal Defendants take issue with the State's characterization of its motion as seeking to "supplement" the Administrative Record; instead, they characterize the State's motion as "a motion for leave to admit extra-record evidence." Docket 27 at 1 n.1 (citing *Friends of Rapid River v. Probert*, 427 F. Supp. 3d 1239, 1264 (D. Idaho 2019)). The Court understands, and the State does not appear to dispute, that the State is indeed seeking to add extra-record evidence to the Administrative Record because the 1951 Maps were not before the IBLA when it made its decision. *See generally* A.R. 6-57 (IBLA Decision) (omitting any reference to the 1951 Maps). That said, the Court will refer to the State's motion as a motion to "supplement" the Administrative Record because the Ninth Circuit Court of Appeals has referred to the two concepts on a virtually interchangeable basis. *See Lands Council*, 395 F.3d at 1030 ("[D]istrict courts are permitted to admit extra-record evidence .

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 7 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 7 of 23

## I. Administrative Waiver

Federal Defendants maintain that the principle of administrative waiver extends to the admission of extra-record evidence on a motion to supplement an administrative record.[29]  Federal Defendants cite three cases that they view as illustrative.[30]  In response, the State asserts that the doctrine of administrative waiver applies only to issues, and not to documents, that were not presented to the agency during the administrative proceedings.[31]

The Court finds that Federal Defendants' argument is unsupported by the caselaw.  Although Federal Defendants are correct in observing that a court generally should not consider arguments that a party failed to raise during the administrative proceedings, this prohibition does not apply to documents that might help a court evaluate whether an agency considered all relevant factors and adequately explained its decision.[32]  As the State points out, courts are reticent to apply the administrative-waiver doctrine to attempts to supplement administrative

---

. . 'when supplementing the record is necessary . . . .'" (quoting *Sw. Ctr.*, 100 F.3d at 1450)).

[29] Docket 27 at 5-6 (citations omitted).

[30] Docket 27 at 6 (first citing *Little Traverse Lake Prop. Owners Ass'n v. Nat'l Park Serv.*, 883 F.3d 644, 658 (6th Cir. 2018); then citing *Havasupai Tribe v. Robertson*, 943 F.2d 32, 34 (9th Cir. 1991); and then citing *Linemaster Switch Corp. v. U.S. Env't Prot. Agency*, 938 F.2d 1299, 1305 (D.C. Cir. 1991)).

[31] Docket 28 at 2-3 (citations omitted).

[32] Docket 27 at 5 (first citing *SSA Terminals v. Carrion*, 821 F.3d 1168, 1174 (9th Cir. 2016); and then citing *Lands Council v. McNair*, 629 F.3d 1070, 1076 (9th Cir. 2010)).

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 8 of 23

records.[33]  The only Ninth Circuit case Federal Defendants cite to support the extension of this principle to extra-record evidence is *Havasupai Tribe v. Robertson*.[34]  In *Havasupai Tribe*, the Tribe sought an order requiring the U.S. Forest Service to supplement or revise an environmental impact statement ("EIS") prepared as part of the Forest Service's approval of the development of a mine.[35] The Tribe requested the court remand based on a letter discussing groundwater issues that the Tribe presented after the EIS was completed.[36]  On appeal, the Ninth Circuit held that the Tribe "had some obligation" to raise these issues before the EIS was completed.[37]  And it noted that the district court determined that the agency had adequately addressed all of the groundwater issues the Tribe raised.[38] *Havasupai Tribe* did not involve a circumstance such as this in which the State

---

[33] *See* Docket 28 at 3 ("[T]here is no reason for an exhaustion requirement to apply to a procedural record-supplementation rule . . . . Applying an exhaustion requirement to any of these other [*Lands Council*] exceptions would be nonsensical." (citing *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 305 F.R.D. 256, 296 (D.N.M. 2015), *amended in part and adhered to on reconsideration*, No. CIV. 12-0069 JB/KBM, 2015 WL 5138286 (D.N.M. Aug. 26, 2015))).

[34] Docket 27 at 6 (citing *Havasupai Tribe*, 943 F.2d at 34).

[35] *Havasupai Tribe v. United States*, 752 F. Supp. 1471, 1476 (D. Ariz. 1990), *aff'd sub nom. Havasupai Tribe v. Robertson*, 943 F.2d 32 (9th Cir. 1991).

[36] *Id.* at 1500.

[37] *Havasupai Tribe*, 943 F.2d at 34.

[38] *Id.*  The Ninth Circuit recognized there may be rare circumstances where such belatedly raised issues could be considered.  *See id.* ("Absent exceptional circumstances, such belatedly raised issues may not form a basis for reversal of an agency decision . . . ." (citing *Vermont Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 553-54 (1978))).

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 9 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 9 of 23

seeks to have this Court, in the first instance, consider evidence that was never presented to the agency.[39]

It is unclear why the State failed present the 1951 Maps to the IBLA, although the State properly raised the general argument those maps support during the administrative proceedings. That argument, to be clear, is that the documents available to USFWS when it drafted the legal description of ANWR in the 1957 Withdrawal Application showed that the Canning and Staines Rivers were distinct hydrologic features.[40] Before the IBLA, the State called into question the topographic maps BLM used to support its determination of ANWR's boundaries, characterizing them as "not field-checked."[41] Although the State did not offer the 1951 Maps to the IBLA in the administrative proceedings, the State's concerns with the evidence on which the IBLA relied, and specifically the way in which BLM interpreted the historical maps and surveys, do not appear to have fundamentally changed from the IBLA proceedings to now. Thus, while the State is seeking to

---

[39] *See id.* ("[T]he Tribe relies upon the contentions of Dr. David Kramer [sic], which were made in a letter drafted after the final EIS issued.").

[40] *See* A.R. 599-600 (State's Statement of Reasons) ("Even if the Staines River were a distributary, BLM cannot ignore the River's name or the maps created contemporaneously with the legal description of the Range when the application for it was first filed in 1957.").

[41] *See* A.R. 70 (State's Reply) ("While some topographic maps that were not field-checked refer to BLM's trickle as a portion of the Staines River . . ., there is no evidence in this case that the area of BLM's boundary line has ever been referred to as the Canning River except by BLM in the course of surveying."); A.R. 40-41 (IBLA Decision) (summarizing the State's arguments concerning the alleged unreliability of the topographic maps upon which BLM's surveys of the disputed land were based).

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 10 of 23

present "new" evidence for the first time in this Court, it is not raising "arguments not raised before the administrative agency involved."[42]

The other cases Federal Defendants cite also fail to establish a bright-line rule prohibiting a district court from considering materials not presented during an administrative proceeding.[43] If anything, these cases reveal that a district court has discretion to consider extra-record materials not produced to the agency depending on the factual circumstances surrounding their omission and, most importantly, whether they fall within one or more of the *Lands Council* exceptions. In applying that principle here, and notwithstanding the State's unexplained failure to present the 1951 Maps to the agency, there is no indication the State was aware of the importance of the 1951 Maps during the IBLA proceedings yet withheld them nonetheless. To the contrary, the State raised concerns regarding the use of non-

---

[42] *SSA Terminals*, 821 F.3d at 1174 (quoting *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 461-62 (6th Cir. 2004)).

[43] Docket 27 at 6 (first citing *Little Traverse Lake*, 883 F. 3d at 658; and then citing *Linemaster*, 938 F.2d at 1305). In *Little Traverse Lake*, the Sixth Circuit noted that a court may decide to consider materials not presented to the agency if doing so would provide "necessary 'background' information to determine whether the [agency] had considered all relevant factors." 883 F.3d at 658. *Linemaster* is more helpful to Federal Defendants, but there the D.C. Circuit exercised its discretion, rather than following a precedential mandate, to decline to supplement an administrative record. The challenger had sought to add to the record data it obtained "at least ten months before" it filed its comments to the agency yet failed to submit to the proper division of the agency "or even . . . flag it as relevant" during the administrative proceedings. *Linemaster*, 938 F.2d at 1305-06. Even if these decisions were binding on the Court, they would not require the Court to find that the State waived its opportunity to supplement the Administrative Record with the 1951 Maps.

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 11 of 23

field-checked topographic maps during the IBLA proceedings, and then the IBLA issued a decision that heavily relied on the 1955 Maps.[44]

In short, if the 1951 Maps are a piece of the "puzzle" to help solve ANWR's boundary, principles of administrative exhaustion should not prevent the consideration of those maps to reach the correct decision, whatever that may be.[45] Accordingly, the Court finds that the State has not waived or forfeited its opportunity to supplement the Administrative Record with the 1951 Maps.

## II. *Lands Council* Exceptions

The State asserts that the 1951 Maps "are necessary to determine whether the IBLA considered all relevant factors when interpreting PLO 2214."[46] The State strongly suggests, but does not definitively state, that USFWS used the 1951 Maps to draft the legal description of ANWR's boundary in PLO 2214.[47] These maps, according to the State, "more precisely" inform the legal description in PLO 2214 because they had been published several years before USFWS drafted the

---

[44] *See, e.g.*, A.R. 13 (IBLA Decision) ("The record contains the relevant USGS topographic maps of the region dating to 1955 . . . ."); A.R. 15-16 (IBLA Decision) ("The record contains another set of maps . . . identifying the '[b]oundary compiled by the U.S. Fish and Wildlife Service as established by' ANILCA, depicted on 1955 and 1956 USGS topographic maps."); A.R. 33 (IBLA Decision) ("For example, the 1955 USGS Quadrangle maps generally acknowledged to have been the primary resource at the disposal of FWS and the Secretary throughout the drafting process depict a line marking the 'Indefinite Boundary' of the 'Arctic National Wildlife Range' running along the west side of the clearly-marked Staines River . . . .").

[45] A.R. 7 (IBLA Decision).

[46] Docket 23 at 9.

[47] *See* Docket 23 at 10 ("The 1951 Quadrangle Maps fill a significant void in the administrative record, which lacks the maps that the USFWS used to draft the legal description in PLO 2214.").

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 12 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 12 of 23

description.[48]  In support of this argument, the State presents the declaration of Gwen Gervelis, Chief Surveyor and State Geodetic Coordinator for the Alaska Department of Natural Resources, Division of Mining, Land, and Water.[49]  Ms. Gervelis explains that a map's "version year is not necessarily the year when the map was prepared or last updated" because "[c]ompiling a map or an update is often a multi-year process that may not be complete until a year or more after the date work began."[50]  Ms. Gervelis states that the 1955 Maps are an updated version of the 1951 Maps but "had not been published by 1957," meaning that "the update was in the process of being compiled in 1957 or that work on an update began after 1957."[51]  As a result, "[i]n 1957, when [USFWS] prepared the written legal description that ultimately appears unchanged in Public Land Order No. 2214, the available USGS 1:250,000 quadrangle maps were" the 1951 Maps.[52]  Implicit in the State's argument is that there may not have been an opportunity for the USGS to refine the 1955 Maps, thus rendering the 1951 Maps a more accurate guide to the intent of the PLO 2214 drafters.  Because the IBLA relied on the 1955 Maps, but not the 1951 Maps, in determining the drafters' intent, the State believes

---

[48] Docket 23 at 11.

[49] Docket 23-1 (Gwen Gervelis Decl.).

[50] Docket 23-1 at 4 ¶ 10.

[51] Docket 23-1 at 5 ¶ 13.

[52] Docket 23-1 at 5 ¶ 12.

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 13 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 13 of 23

there is a "gap" in the administrative record.[53]  The State further claims that the 1951 Maps are necessary to inform the Court's analysis of whether the IBLA considered "all relevant factors" in interpreting PLO 2214 because they are relevant to USFWS's intent—the most important factor the IBLA cited in its decision—and the IBLA expressly welcomed the use of "resources that were before those parties contemporaneous with the development of the PLO."[54]

Federal Defendants do not dispute the contents of Ms. Gervelis's declaration.[55]  Instead, they counter that the State failed to meet its "heavy" burden to satisfy the first *Lands Council* exception because the exception applies only when the agency "'fails to consider a general subject matter' and the evidence is necessary for the court to engage in judicial review."[56]  Pointing to the IBLA's reliance on the USFWS metes and bounds map as "the strongest evidence of" the intent of the PLO 2214 drafters, Federal Defendants maintain that the record contains enough information to explain the IBLA's decision without the need for consideration of the 1951 Maps.[57]  Federal Defendants also question the State's

_____

[53] Docket 23 at 10-11.

[54] Docket 23 at 12-14 (citing A.R. 36 (IBLA Decision) ("Because . . . the drafters' intended meaning in crafting the language of PLO 2214 is paramount to our analysis . . . , resources that were before those parties contemporaneous with the development of the PLO and that may have informed their intent (or reveal it) are relevant to the core question before us . . . .")).

[55] *See generally* Docket 27.

[56] Docket 27 at 9 (quoting *Ctr. for Biological Diversity v. Skalski*, 61 F. Supp. 3d 945, 951-52 (E.D. Cal. 2014)).

[57] Docket 27 at 10 (first citing A.R. 34 (IBLA Decision); and then citing A.R. 154 (USFWS Metes

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 14 of 23

"newfound speculation" that the 1951 Maps were considered by the PLO 2214 drafters, noting that the record does not definitively show that the drafters considered these maps and that the State admitted during the IBLA proceedings that the 1955 Maps were "contemporaneous maps available at the time of the drafting of PLO 2214."[58]

The Court begins its analysis by noting the Ninth Circuit's characterization of the first *Lands Council* exception as "the most difficult to apply" yet also "the broadest exception" to the general prohibition against supplementing an administrative record.[59]  Federal Defendants maintain that this exception only applies if the agency failed to consider "a general subject matter," but that portrayal misses the broader point that supplementation is appropriate when the added materials are "necessary to explain agency action."[60]  If a court cannot find substantial evidence in the record to support an agency's action, or if the agency's inquiry is "insufficient" or "inadequate," supplementation—along with a remand to the agency to consider the additional evidence—often is necessary to ensure that the agency considered all relevant factors.[61]  Furthermore, "[w]hen there is 'such

---

and Bounds Map)).

[58] Docket 27 at 11-12.

[59] *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014); *Pub. Power Council v. Johnson*, 674 F.2d 791, 793 (9th Cir. 1982).

[60] *See* Docket 27 at 9 (citing *Ctr. for Biological Diversity*, 61 F. Supp. 3d at 951-52); *Pub. Power Council*, 674 F.2d at 793.

[61] *See San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014) ("If

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 15 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 15 of 23

a failure to explain administrative action as to frustrate effective judicial review,' the court may 'obtain from the agency . . . additional explanations of the reasons for the agency decision as may prove necessary.'"[62]  In general, courts are inclined to supplement administrative records when the proffered documents are relevant and help them evaluate whether the agency considered all relevant factors.[63]

The Court finds that the IBLA should consider and address the 1951 Maps in determining ANWR's boundary.  The IBLA based its decision on "the resources at [the PLO 2214 drafters'] disposal in 1960."[64]  It appears that the 1951 Maps (1) were available when the PLO 2214 drafters drafted the boundary's description, (2) are relevant to the IBLA's interpretation of the PLO 2214 drafters' intent since they

---

[62] the reviewing court cannot find substantial evidence in the record, it should . . . remand to the agency for further proceedings . . . ." (citation omitted) (quoting *Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980))); *Asarco*, 616 F.2d at 1160 ("If the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction by undertaking its own inquiry into the merits.").

[62] *Pub. Power Council*, 674 F.2d at 793-94 (citations omitted) (quoting *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam)).

[63] *See Ctr. for Biological Diversity v. Bernhardt*, 595 F. Supp. 3d 890, 907 (D. Ariz. 2022) (supplementing administrative record with post-decisional scientific documents to help court determine whether government violated a consultation duty pursuant to the Endangered Species Act); *CP Salmon Corp. v. Ross*, Case No. 3:16-cv-00031-TMB, 2017 WL 11682780, at *5 (D. Alaska Mar. 27, 2017) (supplementing administrative record with EIS and email to help court gauge whether agency addressed all relevant factors in promulgating rule); *Ten Lakes Snowmobile Club v. U.S. Forest Serv.*, CV 15-148-M-DLC, 2016 WL 11220851, at *4 (D. Mont. Nov. 15, 2016) (supplementing administrative record with documents concerning Forest Service's designation of recommended wilderness area and remanding for further consideration); *Idaho State Snowmobile Ass'n v. U.S. Forest Serv.*, No. 3:12-CV-447-BLW, 2014 WL 971151, at *3 (D. Idaho Mar. 12, 2014) (supplementing administrative record with documents concerning internal agency policy).

[64] A.R. 8 (IBLA Decision).

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 16 of 23

show the very boundary established in that order, and (3) may have been the most refined topographical depiction of the disputed land available when the 1957 Withdrawal Application—which included the legal description of ANWR's boundary later incorporated into PLO 2214—was drafted.[65]  Additionally, BLM based much of the work it conducted in the years following ANWR's establishment (e.g., the 1965 BLM surveys of Alaska's North Slope) on the USGS topographic maps available at that time, which included both the 1955 Maps and, in all likelihood, the 1951 Maps.[66]  The IBLA explained in detail and relied upon BLM's actions in the years following PLO 2214 to support its decision.[67]  It naturally follows that, to fully explain its decision and consider all relevant factors, the IBLA should consider the known, relevant materials available to BLM when it implemented PLO 2214 over the ensuing decades.  Or, if the IBLA determines that neither BLM nor the 1957 Withdrawal Application or PLO 2214 drafters relied on the 1951 Maps, it should

---

[65] *See* A.R. 47 (IBLA Decision) ("[T]he State nonetheless criticizes BLM for relying on the USGS Quadrangle maps to assist in its location of the boundary along the Staines River.  However, as that is precisely the resource that the drafters employed in discerning where the line should be drawn, BLM's approach was arguably the most effective available for implementing the PLO." (footnote omitted)).  Both parties agree that the legal description of the disputed boundary was "nearly identical" in the 1957 Withdrawal Application and PLO 2214.  Docket 23 at 5-6; Docket 27 at 3.

[66] *See* A.R. 12-13 (IBLA Decision) (describing special survey instructions guiding the 1965 North Slope surveys as prescribed in a 1947 BLM manual directing surveyors to map ANWR's boundary based on "hydrography . . . obtained from U.S. Geological Survey . . . topographic maps").

[67] *See* A.R. 12-14 (IBLA Decision) (describing BLM's 1965 surveys); A.R. 54 (IBLA Decision) (noting the IBLA's finding that the State failed to establish that an error existed in BLM's 1965 surveys).

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 17 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 17 of 23

explain this finding and consider what implication that has on its interpretation of the disputed language concerning the Canning and Staines Rivers.

Moreover, if the IBLA were to ignore the 1951 Maps while considering potentially inferior evidence in the form of the 1955 Maps, it would "effectively frustrate[] judicial review."[68] This is not a case where the 1951 Maps provide such a clear answer or that the Court is in a position to weigh that evidence itself in the first instance.[69] The IBLA was tasked with interpreting a patchwork of technical documents that are several decades old. The 1951 Maps appear to be relevant evidence for that analysis and hence worthy of consideration by the agency, even if that evidence may not, by itself, hold the key to the intricate puzzle the IBLA must piece together. Therefore, admitting the 1951 Maps into the Administrative Record and remanding the matter to the IBLA would allow the IBLA to properly consider the maps and, if necessary, eventually allow the Court to meaningfully review the IBLA's decision.[70]

---

[68] *Friends of Yosemite Valley v. Scarlett*, 439 F.Supp.2d 1074, 1090 (E.D. Cal. 2006) (citing *Camp v. Pitts*, 411 U.S. 138, 143 (1973) (per curiam)), *aff'd sub nom. Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024 (9th Cir. 2008).

[69] *See, e.g., Ctr. for Env't Sci. Accuracy & Reliability v. Nat'l Park Serv.*, No. 1:14-cv-02063 LJO MJS, 2015 WL 5430278, at *5 (E.D. Cal. Sept. 14, 2015) (rejecting motion to supplement administrative record with expert declaration because a key factual proposition was undisputed and relied upon by decisionmakers in prior cases).

[70] *See Conservation Council for Haw. v. Nat'l Marine Fisheries Serv.*, 97 F. Supp. 3d 1210, 1220 (D. Haw. 2015) (supplementing administrative record with exhibits offered to show the existence of particular factors, approaches, or analyses that agency did not utilize in reaching its decision).

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 18 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 18 of 23

In so finding, the Court recognizes that the State has not offered conclusive evidence that the PLO 2214 drafters considered the 1951 Maps when they drafted the description of ANWR's boundary.[71] It may be the case that the drafters did not consider these maps or that they considered them but opted to place greater emphasis on the 1955 Maps or other materials. As noted above, that is for the IBLA, not the Court, to decide in the first instance. However, the State has presented enough evidence to demonstrate that the 1951 Maps are not merely a "specific hypothes[is]" or "an alternate, speculative set of facts," as Federal Defendants assert.[72] The IBLA noted in its decision that "the drafters of the 1957 Withdrawal Application and 1960 PLO . . . relied upon the hydrography as depicted on the 1955 USGS topographic maps to inform their understanding of the physical circumstances along their intended boundary line."[73] It is not unreasonable to infer that the drafters more likely than not considered the earlier, completed versions of these USGS maps, especially if the USGS had not fully refined the 1955 Maps by the time USFWS drafted the 1957 Withdrawal Application, as the State now asserts and Federal Defendants do not appear to dispute.[74] This inference, along with Ms. Gervelis's declaration outlining the process by which experts develop

---

[71] *See* Docket 27 at 11 (suggesting lack of evidence that the PLO 2214 drafters considered the 1951 Maps).

[72] Docket 27 at 11-12.

[73] A.R. 45 (IBLA Decision).

[74] Docket 23 at 11.

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 19 of 23

topographic maps over time, indicates that the 1951 Maps are hard, and possibly persuasive, evidence that should have been before the IBLA in the first instance.[75] The important—and likely permanent—ramifications of the IBLA's decision for the future of this ecologically and potentially economically valuable land warrant consideration of the 1951 Maps, even if they do not end up altering the IBLA's ultimate decision.[76]

Federal Defendants' remaining argument is unavailing. They pin the blame for any "gap" in the Administrative Record on the State, alleging that the IBLA focused on the 1955 Maps because the State admitted they were contemporaneous maps available when the PLO 2214 drafters drafted the boundary's legal description.[77] It may be the case that the State, whether by conscious choice or omission, portrayed the 1955 Maps as worthy of consideration at the proceedings below.[78] And the State likely should have presented the 1951 Maps during the IBLA proceedings. However, the State's oversight does not

---

[75] *See* Docket 23-1 at 3-5 ¶¶ 9-11 (Gwen Gervelis Decl.) (describing process for creating and updating USGS topographic maps).

[76] *See Gwich'in Steering Comm. v. Bernhardt*, Case Nos. 3:20-cv-00204-SLG, 3:20-cv-00205-SLG, 3:20-cv-00223-SLG, 2021 WL 46703, at *2 (D. Alaska Jan. 5, 2021) (outlining economic and ecological importance of ANWR and concerns raised in Congress regarding its development).

[77] Docket 23 at 12.

[78] *See* A.R. 600 (State's Statement of Reasons) (referencing the 1955 Maps as "[t]he USGS maps of the era").

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 20 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 20 of 23

relieve the IBLA of its an obligation to consider "all relevant factors."[79]  Additionally,

it is possible that the relevance and importance of the 1951 Maps became clear

only after the IBLA issued a decision that relied heavily on the 1955 Maps.

For these reasons, the Court grants the State's motion to supplement the

Administrative Record.  Because the Court finds that the State has met its burden

under the first *Lands Council* exception, it does not address the parties' arguments

concerning the third *Lands Council* exception.[80]

## III. Remand to the IBLA

Although the Court grants the State's motion to supplement the

Administrative Record, the Court is mindful of its need to refrain from acting in a

"factfinding capacity" when reviewing an agency decision and will not substitute its

judgment for that of the IBLA.[81]  Indeed, a district court cannot rely on extra-record

evidence "to judge the wisdom of the agency's action."[82]  Additionally, "[i]f the

record before the agency does not support the agency action, if the agency has

not considered all relevant factors, or if the reviewing court simply cannot evaluate

---

[79] *Lands Council*, 395 F.3d at 1030 (citation omitted).

[80] In addition, because the Court finds that the first *Lands Council* is met based on the arguments considered above, the Court will not evaluate the State's argument that supplementation is necessary "because the IBLA itself endorsed consideration of extra-record materials."  Docket 23 at 14.

[81] *San Luis & Delta-Mendota Water Auth. v. Jewell*, 747 F.3d 581, 602 (9th Cir. 2014).

[82] *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 993 (9th Cir. 2014) (citing *Asarco, Inc. v. U.S. Env't Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980)).

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 21 of 23

the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[83]  Accordingly, the Court cannot, and will not, use the 1951 Maps to interpret the meaning of the disputed language in PLO 2214 or determine at this juncture whether the maps undermine the reasoned analysis the IBLA developed in the proceedings below.[84]  Instead, the Court will remand the matter to the IBLA to undertake a reasoned inquiry into how, if at all, the 1951 Maps affect its analysis and decision.[85]

---

[83] *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Wild Fish Conservancy v. U.S. Env't Prot. Agency*, C08-0156-JCC, 2009 WL 10676069, at *3 (W.D. Wash. Dec. 18, 2009) ("[A] court that concludes that 'an agency's course of inquiry was insufficient or inadequate' after reviewing material outside the record should 'remand the matter to the agency for further consideration . . . .'" (quoting *Asarco*, 616 F.2d at 1160)).  The Court notes that Federal Defendants requested remand in the event the Court grants the State's motion.  Docket 27 at 15.

[84] *See Wiechers v. Moore*, No. 1:13-cv-00223-LJO-JLT, 2013 WL 4676609, at *4 (E.D. Cal. Aug. 30, 2013) ("[E]ven if the materials are supplemented into the record, at most, they could require the Court to remand the matter for further determination; they could not yield the 'win' Plaintiff anticipates.").

[85] *Cf. Pearson v. DeVos*, No. 19-cv-2576 (KBJ), 2020 WL 13615156, at *1 (D.D.C. Feb. 27, 2020) (remanding Department of Education decision regarding tax refund offsets to agency to consider documents added to administrative record); *United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, No. C-09-4029 EMC, 2012 WL 4462915, at *9 (N.D. Cal. Sept. 25, 2012) (remanding breach-of-immigration-bond determination to U.S. Department of Homeland Security to consider defendants' defenses to enforcement and specify portions of administrative record upon which it relies); *Muwekma Ohlone Tribe v. Kempthorne*, 452 F. Supp. 2d 105, 125 (D.D.C. 2006) (remanding administrative proceedings to the DOI to supplement administrative record with statement of reasons explaining its decision to treat plaintiff tribe differently from other tribes).

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 22 of 23

**CONCLUSION**

In light of the foregoing, the State's *Motion to Supplement Administrative Record* at Docket 23 is GRANTED. The Administrative Record is supplemented with the 1951 Maps previously filed with the Court.[86]

This matter is REMANDED to the IBLA for analysis of the 1951 Maps and reconsideration its November 9, 2020 decision in IBLA Appeal Nos. 2016-109 and 2017-55 as warranted.

This Court will retain jurisdiction during the pendency of the remand. Within seven days of the IBLA's issuance of a decision on remand, the parties shall file a status report with the Court providing notification of the IBLA's decision. If the State seeks to proceed with its administrative appeal in this Court after reviewing the IBLA's decision on remand, the parties shall meet and confer and file a proposed scheduling order that sets out deadlines for their merits briefs.

DATED this 9th day of March, 2023, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[86] *See* Docket 24 (Notice of Conventional Filing of Ex. 2 to Pl.'s Mot. to Suppl. Administrative Record).

Case No. 3:22-cv-00078-SLG, *Alaska v. U.S. Dep't of the Interior, et al.*
Order re Motion to Supplement Administrative Record
Page 23 of 23

Case 3:22-cv-00078-SLG   Document 29   Filed 03/09/23   Page 23 of 23