TREG TAYLOR
ATTORNEY GENERAL

Ronald W. Opsahl (Bar No. 2108081)
Ryan E. Farnsworth (Bar No. 2305047)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Fax: (907) 276-3697
Email: ron.opsahl@alaska.gov
        ryan.farnsworth@alaska.gov

Kathleen C. Schroder (*pro hac vice*)
Gail L. Wurtzler (*pro hac vice*)
Mark E. Champoux (*pro hac vice*)
Nicholas R. Peppler (*pro hac vice*)
Davis Graham & Stubbs LLP
1550 Seventeenth St., Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: katie.schroder@dgslaw.com
        gail.wurtzler@dgslaw.com
        mark.champoux@dgslaw.com
        nick.peppler@dgslaw.com

Attorneys for the State of Alaska

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| STATE OF ALASKA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:22-cv-00078-SLG |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| THE INTERIOR, DEB HAALAND, in her | ) | |
| official capacity as Secretary of the | ) | |
| Department of the Interior, INTERIOR | ) | |
| BOARD OF LAND APPEALS, SILVIA | ) | **FIRST AMENDED COMPLAINT** |
| IDZIOREK, in her official capacity as Chief | ) | |
| Administrative Judge of the Interior Board | ) | |
| of Land Appeals, BUREAU OF LAND | ) | |
| MANAGEMENT, TRACY STONE- | ) | |
| MANNING, in her official capacity as | ) | |
| Director of the Bureau of Land | ) | |
| Management, BUREAU OF LAND | ) | |
| MANAGEMENT ALASKA STATE | ) | |
| OFFICE, and STEVEN COHN, in his | ) | |
| official capacity as State Director of the | ) | |
| Bureau of Land Management Alaska State | ) | |
| Office, | ) | |
| Defendants. | ) | |

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 1 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 1 of 27

**INTRODUCTION**

1.      This lawsuit seeks to vindicate the State of Alaska's sovereign territorial rights by challenging the arbitrary and capricious conduct of the United States government that has resulted in a federal land grab of over 20,000 acres that properly belong to the people of Alaska.

2.      When the Department of the Interior, through the U.S. Fish and Wildlife Service ("USFWS"), set aside from the public domain approximately 8,900,000 acres as the Arctic National Wildlife Range ("Range"), it unequivocally defined the Range's northwest boundary as "the extreme west bank of the Canning River." Subsequently, as part of the 1980 Alaska National Interest Conservation Act, 16 U.S.C. §§ 3101–3233 ("ANILCA"), the Range was enlarged to approximately 19,000,000 acres and renamed as the Alaska National Wildlife Refuge ("Refuge"). The Interior Board of Land Appeals ("IBLA"), acting on behalf of the Secretary of the Interior, has twice determined, however, that "the extreme west bank of the Canning River" should be reinterpreted to mean "the Staines River," thus significantly expanding the size of the Range and decreasing the amount of land that should have been conveyed to the State. The State now asks this Court to set aside the IBLA's unlawful decisions and give effect to the express language defining the Canning River, not the Staines River, as the Range's and Refuge's northwest boundary.

3.      The IBLA's arbitrary and capricious decisions deny the State approximately 20,000 acres of lands between the Canning and Staines Rivers which were vacant, unappropriated, and unreserved at the time of the State's selection of these lands.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                          Page 2 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 2 of 27

The State had previously requested the conveyance of these lands under the Alaska Statehood Act, 72 Stat. 339, Public Law 85-508, 85th Congress, H. R. 7999 (July 7, 1958) ("Statehood Act"), and section 906(d) and (g) of ANILCA, 43 U.S.C. § 1635.

4.      Public Land Order No. 2214 ("PLO 2214") was issued in 1960, establishing the Range and defining its northwest boundary as "the mean high water mark of the extreme west bank of the Canning River." In subsequent surveys, the USFWS and Bureau of Land Management ("BLM") designated the Range's, and later the Refuge's, northwest boundary as the Staines River—even though the Staines River is several miles west of the mouth of the Canning River.

5.      Because PLO 2214 unambiguously references the Canning, rather than the Staines, River, the IBLA improperly examined drafter's intent behind PLO 2214. In doing so, the IBLA arbitrarily discounted maps that confirm the drafter's unambiguous intent to designate the Canning, and not the Staines, River as the northwest boundary of the Range, and later the Refuge.

6.      The IBLA also disregarded evidence provided by the State demonstrating that circumstances on the ground did not support the results of the BLM's surveys' mapping the Staines River as the Range's northwest boundary. The BLM's surveyed boundary does not follow the ordinary high mark of any river in existence at the time of the surveys. Where the BLM's surveys map the northwest boundary in three townships, the route actually traverses what BLM later described as "slight rolling uplift in the arctic tundra." And where BLM's maps depict the northwest boundary as turning away from the main channel of the Canning River, the boundary vertically climbs a nine-foot bank

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 3 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 3 of 27

along the extreme west bank of the active channel of the Canning River and proceeds to roll across the vegetated arctic tundra for more than 10 miles without any discernible river channel.

7. The self-serving surveying that deviated from the originally-defined boundary is inconsistent with the original intent of the Range designation and unsupported by BLM's own survey instructions and standards. As such, the BLM and IBLA's decisions should be promptly overturned, the Refuge's northwest boundary should be declared to be the extreme west bank of the Canning River, and the United States should be ordered to proceed with conveying the lands between the Canning River and Staines River to the State in accordance with section 906(d) and (g) of ANILCA, 43 U.S.C. § 1635.

## PARTIES

8. Plaintiff State of Alaska is a sovereign state that received rights to select and receive from the United States grants of more than 103 million acres of lands and minerals under section 6(b) of the Statehood Act. When Congress passed ANILCA in 1980, section 906 conveyed pending selections to the State and allowed the State to select lands not currently available for selection through a process known as "topfiling." *See* 43 U.S.C. § 1635. This unique statutory framework enabled the State to select lands that would fund the government and provide economic benefits to State residents. The State has exhausted all administrative remedies available to secure conveyance of lands between the Staines and Canning Rivers to the State.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 4 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 4 of 27

9. Defendant United States Department of the Interior ("DOI") is an agency of the United States.

10. Defendant Deb Haaland is the Secretary of the Interior and is being sued in her official capacity.

11. Defendant Interior Board of Land Appeals ("IBLA") is an agency within the DOI.

12. Defendant Silvia Idziorek is the Chief Administrative Judge of the Interior Board of Land Appeals and is being sued in her official capacity.

13. Defendant Bureau of Land Management ("BLM") is an agency within the DOI.

14. Defendant Tracy Stone-Manning is the Director of the BLM and is being sued in her official capacity.

15. Defendant Steven Cohn is the State Director of the BLM Alaska Office and is being sued in his official capacity.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this case because it arises under the laws of the United States and seeks judicial review of final agency action under the Declaratory Judgment Act and the Administrative Procedure Act. *See* 28 U.S.C. §§ 1331, 2201; 5 U.S.C. §§ 701–706.

17. Venue is proper in this Court and this Court has personal jurisdiction over the parties because this action is brought against agencies of the United States and officers of those agencies in their official capacities, a substantial part of the events or

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 5 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 5 of 27

omissions giving rise to the claim occurred in the District of Alaska, and all or a

substantial part of the property that is the subject of the action is situated in the District of

Alaska. *See* 28 U.S.C. § 1391(e)(1).

## FACTS

### I.    History of the Northwest Boundary and the State's 1964 Land Grant Selections

A.    <u>Public Land Order 2214 Identified the Extreme West Bank of the Canning River as the Northwest Boundary of the Range, now known as the Refuge</u>.

18.    In 1957, the USFWS prepared an application for a public lands order to

withdraw land to establish the Range, the precursor to the current Refuge.

19.    The USFWS application described the proposed geographic area to be

withdrawn as, in part:

> Beginning at the intersection of the International Boundary line between Alaska and Yukon territory, Canada, with the line of extreme low water of the Arctic Ocean in the vicinity of Monument 1 of said International Boundary line;

> Thence westerly along the said line of extreme low water, including all offshore bars, reefs, and islands to a point of land on the Arctic Seacoast known as Brownlow Point, at approximate longitude 145° 51'W., and latitude 70° 10'N.;

> Thence in a southwesterly direction approximately three (3) miles to the mean high water mark of the extreme west bank of the Canning River;

> Thence southerly up the said west bank of the Canning River along the mean high water mark approximately seventy (70) miles to the mouth of the Marsh Fork of the Canning River . . . .

20.    The Canning River, since well before 1957, has been and is a distinct river

with a well-established channel that flows north through Alaska's North Slope and

empties into Camden Bay.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 6 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 6 of 27

21.     In April 1958, the BLM completed its field report on the USFWS application and described the proposed area to be withdrawn as "an area lying between the Canning River and the United States-Canadian boundary . . . more particularly described in the application."

22.     The maps attached to the 1958 BLM field report reflect a proposed boundary of the Range east of the Staines River and following the Canning River.  The following is an excerpt of one map attached to the 1958 BLM field report and identifies the boundary of the Range east of the Staines River and following the Canning River:



*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 7 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 7 of 27

23.     PLO 2214 was issued on December 6, 1960.  It approved the USFWS withdrawal application and established the Range.  PLO 2214 adopted the boundary description in the USFWS application, including by identifying the Canning River as the Range's northwest boundary.

24.     Neither the USFWS application, the BLM field report, nor PLO 2214 mentions the Staines River.

25.     At the time of the USFWS application and PLO 2214, the Canning River and the Staines River were two separate and distinctly-named rivers.  At that time, the Staines River was not a distributary of the Canning River and the Canning River was not connected to the Staines River.  Contemporaneous maps show each river as a separate, named water course.

26.     The BLM and the State agree that the boundary of the Range has remained the same since PLO 2214 was issued.

B.     <u>The State Sought Land Grants Consistent with the Range's Boundary Described in PLO 2214</u>.

27.     In 1964, the State filed applications for general grant lands under section 6(b) of the Statehood Act for the following townships ("1964 Land Grant Selections"):

- Township 7 North, Range 23 East, Umiat Meridian – F-31845 – GS-1366
- Township 7 North, Range 24 East, Umiat Meridian – F-31848 – GS-1367
- Township 8 North, Range 24 East, Umiat Meridian – F-31847 – GS-1368
- Township 8 North, Range 25 East, Umiat Meridian – F-31849 – GS-1369
- Township 9 North, Range 24 East, Umiat Meridian – F-31832 – GS1352
- Township 9 North, Range 25 East, Umiat Meridian – F-31833 – GS1353

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 8 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 8 of 27

28.     The 1964 Land Grant Selections were located along the Range's northwest boundary, as reflected on Exhibit A.

29.     Because PLO 2214 established the mean high water mark of the extreme west bank of the Canning River as the Range's northwest boundary, the United States did not withdraw the lands between the Canning and Staines Rivers through PLO 2214. Accordingly, these lands were available for selection under section 6(b) of the Statehood Act.

30.     On October 9, 1964, the BLM tentatively approved conveyance of two of the townships included in the 1964 Land Grant Selections.  On January 15, 1965, the BLM tentatively approved conveyance of the remaining 1964 Land Grant Selections.

31.     Through two decisions dated February 4, 1965, the BLM modified its October 9, 1964 and January 15, 1965 decisions to exclude those lands between the Staines and Canning Rivers from the 1964 Land Grant Selections and tentatively approved them for conveyance.

32.     In 1968, the State filed applications for general grant lands for Township 6 North, Range 23 East, Umiat Meridian ("Township 6-23") and other townships to the north, west, and south ("Township 6-23 Selection").

33.     In 1972, the State amended its 1968 applications to include "all available land within these townships, excluding patented land."

34.     In 1974, the BLM tentatively approved the State's selections in Township 6-23.  That approval includes lands east of the Staines River and between the

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                        Page 9 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 9 of 27

Staines River and the Canning River.  The BLM has never withdrawn or amended its tentative approval of the State's selections in Township 6-23.

      C.    <u>The BLM's Surveys Incorrectly Identified the Staines River as the Range's Northwest Boundary</u>.

35.    In 1965, the BLM began to create the official surveys it would use to convey the 1964 Land Grant Selections, as modified.  The BLM issued special instructions for the survey dated March 3, 1965 ("1965 Special Instructions").

36.    The 1965 Special Instructions directed that "the line of mean high water on the left limit of the Staines River will be compiled from the latest available U.S. Coast and Geodetic Survey 'T' sheets" or U.S. Army Corps of Engineers or U.S. Geological Survey topographic sheets.

37.    The 1965 Special Instructions directed that "[i]t is not necessary to monument the points of intersection of the township lines with the Arctic Wildlife [Range] boundary" but instructed that "the banks of the Staines River should be 'tied in' along the township lines."

38.    The 1965 Special Instructions directed that surveyors "will be guided by [the BLM's] Manual of Surveying Instructions, 1947, insofar as it applies[.]"

39.    The 1947 Manual of Survey Instructions sets forth requirements to establish the boundaries of irregular tracts described with metes-and-bounds, such as reservations of federal land.

40.    For metes-and-bounds surveys, the 1947 Manual of Survey Instructions requires monuments at every angle point of a tract boundary.  Additionally, for the survey

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint      Page 10 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 10 of 27

of the boundaries of large grants or reservations, the 1947 Manual of Survey Instructions requires mile corners in addition to angle points and witness points.

41.     Surveys of the 1964 Land Grant Selections were conducted in 1965 (the "1965 Surveys").

42.     The 1965 Surveys were not conducted in accordance with the standards of the 1947 Survey Manual. The survey plats and accompanying field notes do not record any monuments for angle points of the Range boundary located within the area of the survey plats. The survey plats and accompanying field notes do not document witness points and mile corners that identify the Range boundary.

43.     The 1965 Surveys divide into two tracts the four townships that purportedly contain land west of the Staines River (Twps. 7-23, 7-24, 8-24, and 9-24). The surveys' boundaries between the two tracts do not follow actual watercourses.

44.     The legal description of the Range boundary in PLO 2214 calls for a three-mile line between Brownlow Point and the mean high water mark of the extreme west bank of the Canning River. The 1965 Surveys draw the Range boundary between an island or spit one mile west of Brownlow Point and the Staines River, resulting in a line longer than three miles, as reflected on Exhibit A. Thus, the 1965 Survey location of the Range boundary is not consistent with the 1957 legal description identifying Brownlow Point as a survey callout on the coastal boundary.

45.     The hydrography identified on the 1965 Surveys was obtained from U.S. Geological Survey topographic maps. None of the quad maps for this area had been field checked at the time of the 1965 Surveys.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 11 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 11 of 27

46.     In the field notes for the 1965 Surveys, the BLM deemed the Staines River to be the same as the extreme west bank of the Canning River.  However, this conclusion does not account for a nine-foot bank separating the Canning River from the area where the BLM purports that the Range boundary continues to follow the Staines River.  This conclusion also ignores that the area northwesterly of the nine-foot bank has no channel, banks, or other characteristics of a river for more than 10 miles, as reflected in Exhibit A.

47.     In 1968, the 1965 Surveys and accompanying field notes were submitted to the BLM.  The BLM accepted the 1965 Surveys.

D.      The BLM's Survey of Township 6-23 Incorrectly Identifies the Staines River as the Refuge's Northwest Boundary.

48.     In September 2003, the BLM initiated the survey process for Township 6-23 as part of a 50-township survey.  The BLM memorandum requesting the survey included the 1974 tentative approval of the State's selections and the Master Title Plat for Township 6-23 that then showed the Canning River as the boundary of the Refuge.  That BLM memorandum did not indicate that the portions of Sections 3 and 10 in Township 6-23 lying east of the Staines River and between the Staines River and the Canning River should be excluded from the land to be conveyed to the State.

49.     When the survey process was initiated in the fall of 2003, the BLM drafted special instructions that, among other things, specifically allowed that the boundaries for certain Townships at issue could be retraced and/or dependently resurveyed to the extent necessary to execute the surveys.

50.     No significant additional progress on the survey occurred until 2012.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                         Page 12 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 12 of 27

51.     In the spring of 2012, the BLM drafted and approved amended special instructions that significantly departed from the original 2003 instructions ("2012 Amended Special Instructions").

52.     Among other things, the 2012 Amended Special Instructions specifically barred retracement or dependent resurvey of the existing contiguous surveys (except if necessary to meet limits of closure).

53.     The 2012 Amended Special Instructions also dictated that a portion of the Refuge boundary be established along a predetermined fixed line without regard to observation of the geographic features of the Canning River.

54.     In so doing, the 2012 Amended Special Instructions barred the field surveyor from exercising his professional judgment in utilizing the appropriate provisions of the 2009 Survey Manual in conducting the survey and instead directed, without basis, that the survey adhere to a specific predetermined boundary.

55.     The BLM's file indicates that the decision to utilize a fixed and limiting boundary is based on a 2004 memorandum that mistakenly assumes that Congress drew the PLO 2214 boundary and includes a map of unknown provenance lacking any apparent author, date, or title.

56.     The BLM survey was conducted in 2012 (the "2012 Survey").

57.     The 2012 Survey based on the 2012 Amended Special Instructions describes the Refuge boundary between Townships 6-23 and 7-23 through 29 angle points that constitute a fixed and limiting boundary, starting with Angle Point 1 at the

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                    Page 13 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 13 of 27

north and going south to Angle Point 29, which is located on the "left bank of the Canning River, at the line of ordinary high water."

58.     This fixed and limiting boundary between Angle Point 1 and Angle Point 29 follows a "slight rolling uplift in the arctic tundra," which the BLM purports to be the most westerly channel of the Canning River.  The fixed and limiting boundary bears no reasonable connection to the geographic, river-based boundary described in PLO 2214.

59.     The 2012 Survey and accompanying field notes provide no evidence demonstrating that the BLM undertook any investigation regarding whether this fixed and limiting boundary was an active channel of the Canning River at the time of the initial field report in 1958 and subsequent withdrawal by PLO 2214.  Nor do the 2012 Survey and field notes document reliction, avulsion, or any other physical change that would have caused a river to become a vegetated rolling uplift separated from the main channel of the Canning River by a nine-foot bank.

60.     Moreover, the predetermined fixed and limiting boundary deviates from the "slight rolling uplift in the arctic tundra" described in the field notes, and instead follows a fixed line across open tundra, departing from any apparent physical feature in order to intersect the rest of the Refuge boundary at Angle Point 1.

61.     The end result of the BLM's use of a fixed and limiting boundary is that the 2012 Survey boundary for the Refuge between Angle Point 1 and Angle Point 29 does not even purport to follow the "mean high water mark" of the Canning River's extreme

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 14 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 14 of 27

west bank, as articulated in PLO 2214, nor any other consistent geographic feature that could be associated with a river.

62.     The BLM's decision to utilize a seemingly arbitrary fixed and limiting boundary is particularly egregious given that the high water mark of the Canning River—including as it may have existed in 1958—can be observed and determined through reasonably diligent investigation.

63.     For example, in May 2003 a hydrologist and cartographer for the USFWS began a field reconnaissance of the Canning River boundary.  The purpose of the investigation was to "determine the location of the extreme west bank of the Staines/Canning River system . . . ."  Despite much of the area still being under snow and ice, the USFWS was able to determine extensive information about historic channels of the Canning River in the relevant vicinity.  Notably, where the report's investigators found evidence of an ordinary high water mark of the Canning, it was within the defined channel of the Canning River and not in the vicinity of the BLM's chosen boundary farther west.

64.     The BLM's use of a fixed and limiting boundary deviates from numerous 2009 Survey Manual provisions and surveying best practices.

65.     The BLM's 2012 Survey and accompanying field notes do not provide evidence or analysis that could support or justify such deviations.

66.     The 2012 Survey did not refer to the Staines River as a boundary of the Refuge.  Instead, it continued to refer to the Canning River as the boundary.

67.     In 2015, the BLM accepted the 2012 Survey.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                                    Page 15 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 15 of 27

68.     Subsequent to the 2012 Survey and through at least 2017, the master title plat on file with the BLM continued to show the Canning River as the boundary of the Refuge.

E.     The State's Expert Analysis Confirms the BLM Erred by Identifying the Staines River as the Range's, and Later the Refuge's, Northwest Boundary.

69.     In 2016, the State engaged Jerry Broadus, PLS.  Mr. Broadus is a surveyor and attorney with extensive experience, including teaching advanced classes for the BLM.

70.     Mr. Broadus conducted an independent analysis of the boundary of what was the Range and is now the Refuge.  Mr. Broadus spent several days in the field studying the Canning River, Brownlow Point, and the BLM's purported boundary. Mr. Broadus and his associates compiled aerial and ground photographs of these areas. Mr. Broadus then prepared a report of his conclusions.

71.     Mr. Broadus concluded there is no ambiguity, latent or otherwise, in the written legal land description for PLO 2214.

72.     Mr. Broadus concluded that historical evidence does not support the BLM's claim of reliction of the Staines River channel.

73.     Mr. Broadus concluded that the 2012 Survey's use of a fixed and limiting boundary does not conform with survey standards.

74.     Mr. Broadus concluded that the BLM located the Refuge boundary in area of open tundra through Township 6-23.  Further, Mr. Broadus concluded there has been

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                    Page 16 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 16 of 27

no change in the relationship of the Canning River to this area of open tundra since at least 1955.

75.    Mr. Broadus ultimately concluded that "[a]ll the evidence points to the obviously visible west bank of the Canning River, and the obvious prominence of Brownlow Point, as marking the true line described in PLO 2214.  The BLM 1968 and 2012 surveys are grossly erroneous."

F.    The BLM Improperly Denied the State's Request for Priority Conveyance of the 1964 Land Grant Selections.

76.    For Townships 7-23, 7-24, 8-24, and 9-24, the State filed reassertions of its Statehood Act selections four times between 1978 and 1980.  These reassertions seek "all available unpatented lands" within each township.  The State is not aware of any BLM decision rejecting or limiting the State's reassertions.

77.    In a series of filings between 1981 and 1993, the State "topfiled" on all of its 1964 Land Grant Selections pursuant to section 906(e) of ANILCA, 16 U.S.C. §§ 3101–3233.  The State is not aware of any BLM documentation rejecting or limiting its topfilings.

78.    In a letter dated October 17, 2014, the State requested that the BLM convey the 1964 Land Grant Selections to the State.

79.    On February 2, 2016, the BLM responded to the State's October 17, 2014 letter.  The BLM informed the State that "there are no remaining State-selected lands" available for conveyance in the 1964 Land Grant Selections because the BLM had already "fully adjudicated" them in the 1960s, issuing decisions and conveying all

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                    Page 17 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 17 of 27

"available lands" through patents issued in 1974. The BLM rejected the State's assertion that the 1964 Land Grant Selections were available for selection. The BLM concluded that the 1965 Surveys had "correctly identified the [northwestern] boundary of the [Arctic National Wildlife] Range and resolved any question of the legal description" of the boundary in PLO 2214 ("1964 Land Grant Selection Decision").

80.     On February 25, 2016, the State filed a Notice of Appeal advising the BLM Alaska State Office that the State was seeking review by the Interior Board of Land Appeals ("IBLA") of the 1964 Land Grant Selection Decision.

81.     The IBLA docketed the State's appeal of the 1964 Land Grant Selection Decision as IBLA No. 2016-109.

82.     In a Statement of Reasons filed in the appeal, the State requested that the IBLA vacate the 1964 Land Grant Selection Decision, remand the matter to the BLM, direct the BLM to issue tentative approval for the 1964 Land Grant Selections, and direct the BLM to complete the necessary surveys and issue the final patent within one year.

G.     The BLM Improperly Dismissed the State's Protest of the BLM's Survey Plat for Township 6-23.

83.     On February 29, 2016, the BLM Alaska State Office published a *Notice of Filing of Plats of Survey* for Township 6-23 and other townships at 81 Fed. Reg. 10,274.

84.     On March 25, 2016, the State submitted a protest to the BLM Alaska State Office of the proposed official filing of the plat of survey for Township 6-23. The State challenged the plat's adoption of a fixed and limiting boundary along what the BLM

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 18 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 18 of 27

regarded as the Staines River, rather than an ambulatory boundary along what the State regarded as the Canning River.

85.     On November 8, 2016, the BLM Alaska State Office denied the State's protest, holding that the 2012 Survey was performed correctly in accordance with the intent of PLO 2214 and the 2009 Survey Manual ("Township 6-23 Decision").

86.     In the Township 6-23 Decision, the BLM "concur[red] that there is some ambiguity in the written legal land description for PLO No. 2214" but found "this ambiguity is not *Patent*, rather it is *Latent* . . . ."

87.     In the Township 6-23 Decision, the BLM "agree[d] with the State" that at the time of the 2012 Survey, the Staines River channel "was no longer functioning as an active channel of the Canning River."  Without any evidence, the BLM "determined that seasonal forces of nature caused the Staines River channel to relict."

88.     In the Township 6-23 Decision, the BLM further determined, based on pre-statehood aerial photography, that "the most westerly channel of the Staines River channel had always been a fairly narrow channel" and that "evidence of its last known location was determined from the physical feature of a slight rolling uplift in the arctic tundra."

89.     On December 2, 2016, the State filed a Notice of Appeal advising the BLM Alaska State Office that the State was seeking the IBLA's review of the Township 6-23 Decision.

90.     The IBLA docketed the State's appeal of the Township 6-23 Decision as IBLA No. 2017-55.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 19 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 19 of 27

91.     In the Statement of Reasons, the State requested that the IBLA reject the 2012 Survey, find that the "obvious and prominent west bank of the Canning River is the boundary of [the Refuge] from the river's mouth near Brownlow Point through Twp. 6-23 continuing to the Marsh Fork of the Canning River," and order the BLM to complete survey work consistent with this finding.

## II.     Interior Board of Land Appeals Decisions

### A.     The 2020 IBLA Decision

92.     The IBLA consolidated appeals Nos. 2016-109 and 2017-55 and issued a single decision dated November 9, 2020 ("IBLA Decision").  Despite the voluminous evidence that the State presented to the contrary, the IBLA found that "the State has not carried its burden to demonstrate error by BLM in the challenged Decisions or the underlying actions that informed these Decisions."  The IBLA affirmed both the 1964 Land Grant Selection Decision and the Township 6-23 Decision.

93.     Despite the express language of the USFWS's 1957 public lands withdrawal application and PLO 2214 itself designating the Range's northwest boundary as the Canning River, the IBLA arbitrarily determined at the outset that "the PLO's reference to the 'extreme west bank of the Canning River' was, in fact, intended to refer to the mapped channels of the Staines River . . . ."  The IBLA entirely failed to consider the evidence contradicting and undermining that conclusion.

94.     The IBLA recognized the State's unrefuted evidence that the boundary identified in the BLM's 1965 Surveys did not follow a river or high water mark, and that the surveyed boundary is not consistent with the call from Brownlow Point to the

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                          Page 20 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 20 of 27

Canning River in the boundary descriptions. Nonetheless, the IBLA arbitrarily discounted this evidence by characterizing it as merely argument "that the mapped landmarks identified as the Staines River for purposes of defining the [Refuge] boundary are difficult to reconcile and constitute poor subjects for use as natural monuments in surveying . . . ."

95. The IBLA further disregarded the fact that circumstances on the ground are inconsistent with the BLM's surveyed boundary.

96. The IBLA arbitrarily dismissed the fact that the BLM's 1965 Surveys did not comply with the monumentation requirements in the 1947 Manual of Surveying Instructions. The IBLA characterized the State's evidence on this issue as "little more than disagreement with the professional opinions of BLM's surveying experts concerning matters within the realm of their expertise . . . ." The IBLA thus did not review this issue *de novo* as it has the authority to do but, instead, deferred entirely to the BLM's surveyors.

97. The IBLA arbitrarily rejected evidence that the 2012 Special Instructions improperly directed the use of a fixed and limiting boundary as a portion of the southerly continuation of the Refuge boundary in part because it found no error in BLM's 1965 Surveys of the northern portions of the Refuge's boundary. In rejecting this evidence, the IBLA also disregarded evidence demonstrating that the boundary identified through the 2012 Survey was inconsistent with circumstances on the ground, such as the location of the high water mark of the Canning River and the lack of any evidence of reliction by that river.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 21 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 21 of 27

98.     Ultimately, the IBLA arbitrarily and capriciously disregarded any evidence contrary to its conclusion that PLO 2214 must have intended to designate the Staines River as the northwest boundary of the Range, now the Refuge, even though PLO 2214 did not say so, as well as any evidence demonstrating errors in the BLM's surveys.

B.      The 2023 IBLA Remand Decision

99.     On April 6, 2022, the State filed a Complaint challenging the IBLA Decision.  On November 17, 2022, the State moved to supplement the administrative record with 19 United States Geological Survey ("USGS") 1:250,000 quadrangle maps dated 1951 and a 1952 Army Map Service copy of a 1951 USGS 1:250,000 quadrangle map (collectively, "the 1951 Maps").

100.    By Order dated March 9, 2023, the Court supplemented the administrative record with the 1951 Maps.  The Court also remanded the matter to the IBLA for analysis of the 1951 Maps and reconsideration of the IBLA Decision.

101.    On remand, the State filed a Supplemental Statement of Reasons asserting that the 1951 Maps were available to, and considered by, the USFWS when it drafted the metes and bounds description in PLO 2214.  The State further asserted that the 1951 Maps refuted the IBLA's prior conclusion that the drafters of the metes and bounds description intended to designate the Staines River, rather than the Canning River, as the Range's northwest boundary.  The State asked the IBLA to affirmatively conclude that the 1951 Maps demonstrate that the USFWS intended to designate the Canning River as the Range's northwest boundary.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 22 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 22 of 27

102.  On April 2, 2024, the IBLA issued a decision ("Remand Decision") modifying the IBLA Decision in part but ultimately reaffirming the remainder of the IBLA Decision.

103.  The Remand Decision modified the IBLA Decision to reflect that other maps cited by the IBLA in the IBLA Decision (the "1955 Maps") were not available to the drafters of PLO 2214.

104.  The IBLA, however, arbitrarily determined that this modification did not alter its conclusions in the IBLA Decision.  The IBLA incorrectly interpreted the 1951 Maps and historical record evidence and erroneously discounted contradictory evidence. Among other errors, the IBLA arbitrarily determined that the drafters of PLO 2214 elected to reference as Brownlow Point the end of a "broken string of land" in the Arctic Ocean, rather than the prominent terminus of a peninsula.  The IBLA ultimately affirmed the IBLA Decision.

### COUNT ONE: VIOLATION OF APA—ARBITRARY AND CAPRICIOUS ACTION

105.  The State realleges, as if fully set forth herein, each and every allegation contained in the preceding paragraphs.

106.  The Administrative Procedure Act allows a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]"  5 U.S.C. § 706(2)(A).

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 23 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 23 of 27

107.    The State has suffered a "legal wrong" and is "adversely affected" and/or "aggrieved" by the IBLA Decision and Remand Decision affirming the 1964 Land Grant Selection Decision and the Township 6-23 Decision.

108.    The IBLA Decision and Remand Decision affirming the 1964 Land Grant Selection Decision and the Township 6-23 Decision are "final agency action[s] for which there is no other adequate remedy in court."

109.    The IBLA Decision and Remand Decision affirming the 1964 Land Grant Selection Decision and the Township 6-23 Decision are arbitrary, capricious, an abuse of discretion, and not in accordance with law.

110.    The IBLA's conclusion that PLO 2214 intended to designate the Staines River as the Range's northwest boundary was arbitrary, capricious, an abuse of discretion, and not in accordance with law.

111.    The IBLA Decision and Remand Decision affirming the 1964 Land Grant Selection Decision and the Township 6-23 Decision—despite the State's evidence that the boundaries identified in the BLM's 1965 Survey and 2012 Survey do not comport with actual natural features and circumstances on the ground—was arbitrary, capricious, an abuse of discretion, and contrary to law.

112.    The IBLA Decision and Remand Decision affirming the 1964 Land Grant Selection Decision and the Township 6-23 Decision—despite the State's evidence that the 1965 Surveys and 2012 Survey did not follow applicable guidance, including the applicable Manuals of Surveying Instructions and special instructions—was arbitrary, capricious, an abuse of discretion, and contrary to law.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 24 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 24 of 27

113.    The IBLA Decision and Remand Decision affirming the 1964 Land Grant Selection Decision and the Township 6-23 Decision—despite the fact that the 2012 Special Instructions improperly directed the use of a fixed and limiting boundary as a portion of the Refuge boundary—was arbitrary, capricious, an abuse of discretion, and contrary to law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests that this Court.

1.    Set aside the IBLA Decision, Remand Decision, 1964 Land Grant Selection Decision, and Township 6-23 Decision as arbitrary, capricious, abuses of discretion, or not in accordance with law;

2.    Issue a declaratory judgment that the obvious and prominent west bank of the Canning River is the boundary of the Refuge from the river's mouth near Brownlow Point through Township 6-23 continuing to the Marsh Fork of the Canning River;

3.    Direct the BLM to expeditiously complete survey work consistent with this declaratory judgment;

4.    Direct the Department of the Interior to promptly proceed with all necessary actions to convey all of the 1964 Land Grant Selections and Township 6-23 Selection, including completion of any necessary surveys and issuance of the final patent for the 1964 Land Grant Selections and Township 6-23 Selection;

5.    Grant Plaintiff its costs, expenses, and attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6.    Grant Plaintiff such further relief as this Court deems appropriate.

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint                                    Page 25 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 25 of 27

DATED: June 3, 2024.

TREG TAYLOR
ATTORNEY GENERAL

By:    */s/    Ronald W. Opsahl*
Ronald W. Opsahl (Alaska Bar No. 2108081)
Ryan E. Farnsworth (Bar No. 2305047)
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501
Telephone: (907) 269-5232
Facsimile: (907) 279-2834
Email:  ron.opsahl@alaska.gov
        ryan.farnsworth@alaska.gov


By:    */s/    Kathleen C. Schroder*
Kathleen C. Schroder (*pro hac vice*)
Gail L. Wurtzler (*pro hac vice*)
Mark E. Champoux (*pro hac vice*)
Nicholas R. Peppler (*pro hac vice*)
Davis Graham & Stubbs LLP
1550 Seventeenth St., Suite 500
Denver, CO 80202
Telephone: (303) 892-9400
Fax: (303) 893-1379
Email: katie.schroder@dgslaw.com
       gail.wurtzler@dgslaw.com
       mark.champoux@dgslaw.com
       nick.peppler@dgslaw.com


Attorneys for the State of Alaska

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint      Page 26 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 26 of 27

## CERTIFICATE OF SERVICE

I certify that on **June 3, 2023**, the foregoing document was served electronically on all parties listed on the CM/ECF system.

/s/ Kathleen C. Schroder
Kathleen C. Schroder

*Alaska v. U.S. Dep't of the Interior, et al.*, Case No. 3:22-cv-00078-SLG
State of Alaska's First Amended Complaint
Page 27 of 27
Case 3:22-cv-00078-SLG   Document 34   Filed 06/03/24   Page 27 of 27